Argued February 28; affirmed March 21, 1939

# FIRST NATIONAL BANK OF PORTLAND
## *v.* WALL

(88 P. (2d) 311)

Department 2.

*Robert A. Bennett* and *Bert S. Gooding*, both of Portland, for appellant.

*Allen H. McCurtain*, of Portland, for respondent.

BELT, J. On July 8, 1937, the defendant, Blanche M. Wall, filed a complaint against her husband, Charles M. Wall, charging that he was an insane person and dangerous to be at large. On the following day Wall was arrested and taken into custody. After an alleged hearing, he was committed by the Honorable George Tazwell, judge of the probate department of the circuit court for Multnomah county, to the state hospital at Salem, Oregon, as an insane person. On November 9, 1937, the superintendent of the state hospital released Wall on parole to Robert A. Bennett, counsel for plaintiff herein. After Wall was committed as an insane person, the defendant filed a petition to be appointed as guardian of her husband's estate. The court, on August 6, 1937, refused to appoint her but appointed the United States National Bank of Portland to act in that capacity. Wall, on November 17, 1937, filed his petition with the court alleging in substance that he

was a sane person capable of handling his own property and that the letters of guardianship theretofore issued should be revoked. The bank answered, denying any knowledge of Wall's mental condition, and asked that a hearing be held to determine petitioner's sanity and that if it were found and adjudged that he was a sane man capable of conducting his own affairs, its guardianship be terminated.

While the above proceedings relative to revocation of letters of guardianship were pending, Charles M. Wall, on February 1, 1938, filed the instant independent suit in the circuit court for Multnomah county against his wife, praying in his complaint: (1) That the order committing him to the state hospital as an insane person be set aside and declared to be void; (2) that all records of the proceedings in the court pertaining to the purported adjudication of insanity and the commitment of the plaintiff be expunged; and (3) that the statute (§ 67-1606, Oregon Code 1930) under which plaintiff was adjudged insane and committed be declared unconstitutional.

The plaintiff, in his complaint, alleges in substance that the defendant, in filing the complaint charging him with being an insane person, was actuated by malice and hatred and had no probable cause for so doing; that he was arrested on such charge and incarcerated in the county jail where he was not permitted to communicate with his friends or obtain the benefit of counsel in the "pretended lunacy inquisition"; that he was never taken before the court for any hearing on the charge of insanity or permitted to defend against the same; that the physicians appointed by the court failed to make any "adequate and bona fide examination" of him as to his sanity, but that the certificates of insanity filed were "based on false and fraudulent accusations

made against plaintiff by other persons   *   *   *   and on an interview had by Robert P. Smith (examining physician) with the plaintiff on or about January 8, 1935"; that the findings of insanity made by the court were false and "without any foundation whatsoever" and the testimony upon which the same were based was false and given "solely for the purpose of fraudulently obtaining an order of the court committing plaintiff to the asylum for the insane, and to deprive plaintiff of his legal rights and the control of his property"; and that the order of commitment—a copy of which is attached to the complaint—has never been "annulled, vacated, or cancelled by order of any court."

It is further alleged in the complaint that the statute (§ 67-1606, Oregon Code 1930) under which the insanity inquisition was instituted, contravenes the federal and state constitutions in that "it fails to require notice of citation to be issued to plaintiff when accused of being insane and ordered produced for a trial on said issue; denies the right of trial by jury to plaintiff on an issue of his sanity, and wholly fails to provide plaintiff an opportunity to be heard in defense of such charge of insanity; and purports to authorize judges of the County Courts of the State of Oregon to commit alleged insane persons to an asylum without informing or advising them of the nature of the charge or proceedings, and without giving such persons an opportunity to defend a charge of insanity, and thereby deprive such persons, and particularly this plaintiff, of liberty and property without due process of law."

Defendant demurred to the complaint on the grounds:

"First: That the court has no jurisdiction of the subject of this suit;

"Second: That the plaintiff has no legal capacity to sue;

"Third: That there is another action pending between the same parties, for the same cause;

"Fourth: That there is a defect of parties defendant, and

"Fifth: That the complaint does not state facts sufficient to constitute a cause of suit against the defendant, Blanche M. Wall."

Upon demurrer being overruled, the defendant answered, denying the material allegations of the complaint to which attention has been directed, and alleged as an affirmative defense the pendency in the probate department of the circuit court of the proceedings instituted by plaintiff to have letters of guardianship revoked.

The plaintiff, in his reply, admits the pendency of the guardianship proceedings.

It would fill many pages of the reports to set forth the pleadings in haec verba but it is believed the above summary of the same will suffice.

Thereafter, on July 14, 1938, the cause came on for hearing in the circuit court without the intervention of a jury. Upon conclusion of the trial, on July 20, 1938, the court made an oral announcement from the bench that no fraud had been shown, but took the case under advisement relative to certain of its phases and required the submission of briefs thereon.

The plaintiff died on July 20, 1938. On July 25, 1938, the court, over the objection of the defendant, substituted "The First National Bank of Portland, executor of the last will and testament of Charles M. Wall, deceased," as a party plaintiff. In the motion to substitute the executor as plaintiff, it is recited that on

August 10, 1938, the defendant filed a petition in the probate department of the circuit court to revoke the will of decedent on the ground that he had no mental capacity to execute the same. It is averred in the petition for revocation that the will was executed on May 5, 1938; that Wall was adjudged insane and committed to the state hospital on July 9, 1937, and that he had never been discharged therefrom.

On September 8, 1938, the court, after again hearing oral argument, entered a decree as of July 20, 1938, dismissing the suit without costs to either party. Plaintiff appeals.

The voluminous record in this case, including a transcript of evidence having 462 pages—to say nothing of "overfull" pleadings—might well have been avoided had the court sustained the demurrer to the complaint.

■ Plaintiff had his remedy in an appeal from the order of commitment, but he certainly had no cause of suit against the defendant. If he desired the record expunged, application should have been made in the first instance to the court which entered it. It must be obvious that this defendant has no power to expunge the record. No relief is asked against her which can be enforced in this suit. Hence there was a fatal defect of parties.

■ If plaintiff had any cause of suit against defendant it abated upon his death. Any injury sustained by him by reason of the commitment to the state hospital was purely personal and is a matter in which the executor of his estate has no interest. The order of substitution should not have been made. No cause of suit which plaintiff may have had by reason of the commitment could have been assigned. Hence it did not survive upon his death: *Rorvik v. North Pacific Lumber Co.,*

99 Or. 58, 190 P. 331, 195 P. 163; *Nadstanek v. Trask,* 130 Or. 669, 281 P. 840, 67 A. L. R. 599, 1 American Jurisprudence p. 69.

Section 5-701, Oregon Code 1930 provides:

"A cause of action arising out of an injury to the person dies with the person of either party, except as provided in section 5-703; but the provisions of this chapter shall not be construed so as to abate the action mentioned in section 1-312, or to defeat or prejudice the right of action given by section 1-307."

Section 5-703, referred to in the above section, provides that action may be maintained for the death of a person caused by the wrongful act or omission of another, and it has no application herein.

Section 1-312 of the Code, also referred to in section 5-701, provides:

"An action for a wrong shall not abate by the death of any party, after a verdict has been given therein, but the action shall proceed thereafter in the same manner as in cases where the cause of action survives."

In our opinion, the above section also fails to apply, as the "wrong" or tort does not directly affect the person, but only the feelings or reputation of such person. It is not an injury of a physical character: 1 American Jurisprudence p. 77. Actions based on mere personal torts not capable of passing by assignment do not survive. It is obvious that section 1-307 also referred to in section 5-701 has no application as it pertains to prosecution of actions for injury or death of child.

Furthermore, at the time this suit was commenced, Charles M. Wall had been adjudged insane and was under guardianship. He did not have the capacity to maintain this independent suit. Under such circum-

stances a guardian ad litem should have been appointed as provided in section 1-306, Oregon Code 1930. See 14 R. C. L. 611; 32 C. J. 781.

In view of what has been said it is neither proper nor necessary to consider the question of the alleged unconstitutionality of the statute.

The decree of the lower court is affirmed. Defendant is entitled to costs and disbursements.

RAND, C. J., and BAILEY and LUSK, JJ., concur.