Argued April 21, affirmed in part; reversed in part June 9, 1972

# STATE OF OREGON, *Respondent, v.*
# PATRICK COLLMAN, *Appellant.*

497 P2d 1233

*Laird C. Kirkpatrick,* Legal Aid Service, Portland, argued the cause for appellant. With him on the briefs were Richard Oliver, Associated Counsel from Foreign Jurisdiction, and Jay Folberg, Director, Legal Aid Service, Portland.

*John H. Clough,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and John W. Osburn, Solicitor General, Salem.

Before Schwab, Chief Judge, and Langtry and Thornton, Judges.

LANGTRY, J.

This is an appeal, according to the amended notice of appeal, from an "Order of mental commitment entered on September 14, 1971 * * * and from the Order denying appellant's motion to set aside the Order of mental commitment * * *." The motion to set aside also sought to expunge the record.

The record shows that Patrick Collman, the defendant (we use the term "defendant" for convenience and because it was used in the briefs; ORS ch 426 describes such a person as an "allegedly mentally ill

person"), was taken into custody by a police officer at approximately 2 p.m. on September 13, 1971, because, as the officer wrote in the Notice of Mental Illness:

"He is unable to understand what is happening around him. His answers are unrelated to the questions asked."

Shortly thereafter, the officer removed defendant to Multnomah County Hospital crisis unit.

A citation① was served upon defendant the following morning informing him that a hearing would be held at 10 a.m. that day. The mental commitment hearing was held before the probate department of the Multnomah County Circuit Court. Two psychiatrists appointed to examine defendant made their written reports to the court. Each recommended commitment, one diagnosing "acute psychosis—probably drug induced," and the other "schizophrenic reaction—possibly drug induced." The court signed an order② find-

---

① ORS 426.090 provides:

"The judge shall cause a citation to issue to the allegedly mentally ill person stating the nature of the information filed concerning him. The citation shall further contain a notice of the time and place of the commitment hearing, the right to legal counsel, the right to subpena witnesses in behalf of himself to the hearing and such other information as the court may direct. The citation shall be served upon such person by the officer who takes such person into custody, by delivering a duly certified copy of the original thereof to him in person."

② The prewritten form captioned "Order of Commitment" upon which were typed the names of the psychiatrists, defendant, and the date of the hearing, states:

"By virtue of a notice filed in the above-entitled matter and citation issued to and served upon the above-named alleged mentally ill person, there appeared before the undersigned Judge at the hour of 10 o'clock a.m. on the date hereinafter indicated said alleged mentally ill person and JOHN H. WATERMAN, M.D. and RICHARD A. TRUAX, M.D. competent physicians licensed by the State Board of Medical Examiners

ing defendant mentally ill and committing him to Dammasch State Hospital. Other than the order, no record was made of the proceedings at that time. Defendant was received at Dammasch State Hospital on September 14, 1971, and he was given final discharge on September 30, 1971.[2]

On October 1, 1971, represented by legal aid counsel, defendant filed with the circuit court the motion to set aside the commitment order and expunge the record. And on October 14, 1971, he filed his notice of appeal from the order of commitment.

The circuit court held a hearing on defendant's motion on October 14. The testimony (which was re-

for the State of Oregon to practice medicine and surgery and specializing in psychiatry, who were appointed by the Court to examine said alleged mentally ill person;

"Whereupon said alleged mentally ill person, after being fully apprised of the right to legal counsel and an additional examining physician, was examined by the above-named physicians as to said person's mental condition; and

"IT NOW APPEARING TO THE COURT from the verified findings of the above-named physicians and all other competent evidence submitted that said PAT COLEMAN whose true name is PATRICK COLLMAN is mentally ill and in need of treatment, care or custody;

"NOW, THEREFORE, IT IS HEREBY CONSIDERED, ORDERED AND ADJUDGED that said PAT COLEMAN whose true name is PATRICK COLLMAN is a mentally ill person and as such is committed to the F. H. Dammasch State Hospital at Wilsonville, Oregon; and

"IT IS FURTHER ORDERED that said above-named person be delivered promptly and safely to the Superintendent of said F. H. Dammasch State Hospital.

"Dated this 14th day of September, 1971.

WILLIAM L. DICKSON
Circuit Judge"

[2]This court has held an appeal from an order of commitment is not moot notwithstanding that defendant was released as competent pending appeal. State v. Van Tassel, 5 Or App 376, 484 P2d 1117 (1971).

ported) at this hearing disclosed the following in addition to that set out above. Defendant was given three injections of a drug called Inapsine at the hospital crisis unit prior to the commitment hearing. The doctor in charge at the clinic diagnosed defendant as a paranoid schizophrenic and his condition was described as "agitated." The last injection of Inapsine was at 2:30 a.m. Defendant contends the drug was administered without his consent and affected his ability to respond to questions at the hearing. When the commitment hearing started defendant was still physically obstreperous, causing the judge to conduct the hearing in a holding room of the courthouse to which defendant had been brought, rather than having the hearing in the courtroom. The two psychiatrists accompanied the judge. The evidence was that the court and one of the doctors informed defendant of his right to counsel, which advice defendant ignored. The only coherent thing witnesses remembered his saying was, "I want a doctor. I want help."

The assignments of error are: (1) the failure of the court to have the commitment hearing reported violated due process of law; (2) the court failed to record a "full account" of the commitment hearing as required by ORS 426.160; (3) defendant should have been advised of his constitutional right to a court-appointed counsel; (4) the court should have appointed counsel to represent defendant; (5) defendant was not provided an opportunity to cross-examine the psychiatrists; (6) the court erred in committing defendant without a finding that he was mentally ill beyond a reasonable doubt; (7) the hearing should have been in open court; and (8) the order to set aside the order and expunge the record should have been allowed.

## THE RIGHT TO COUNSEL

ORS 426.100 provides:

"(1) At the time of the hearing before the court, prescribed by ORS 426.070 to 426.150, the court shall inform the allegedly mentally ill person that he has the right to legal counsel during the proceedings and that, at his request, or the request of his legal guardian, relative or friend, the court may postpone the hearing up to 72 hours in order to allow the allegedly mentally ill person an opportunity to obtain counsel, and subpena witnesses in his behalf to the hearing.

"(2) *If no request for legal counsel is made, the court may, at its discretion, appoint legal counsel.*

"(3) *If the person is indigent, the court may provide by order for payment of a reasonable attorney fee by the county of residence of the allegedly mentally ill person.* In all cases such legal counsel shall be present at the hearing and examination and may examine all witnesses offering testimony, and otherwise represent such person.

"(4) Where legal counsel is requested or provided, the court may continue the hearing for up to 72 hours after counsel has been obtained by appointment or otherwise and may make such orders for the care and custody of the person during that period as it deems necessary." (Emphasis supplied.)

This section appears to leave to the court's discretion whether legal counsel should be appointed for an allegedly mentally ill person. Defendant argues that the Due Process Clause of the Fourteenth Amendment requires appointment of counsel.

The constitutional right to counsel in civil proceedings which may result in involuntary incarceration or deprivation of liberty was established in *In Re Gault,* 387 US 1, 87 S Ct 1428, 18 L Ed 2d 527 (1967).

Relying on the reasoning of *Gault,* which involved a juvenile delinquency proceeding, the Tenth Circuit Court of Appeals held in *Heryford v. Parker,* 396 F2d 393 (10th Cir 1968), that due process entitled an allegedly mentally deficient person to representation by counsel in a civil mental commitment proceeding.

> "* * * It matters not whether the proceedings be labeled 'civil' or 'criminal' or whether the subject matter be mental instability or juvenile delinquency. It is the likelihood of involuntary incarceration— whether for punishment as an adult for a crime, rehabilitation as a juvenile for delinquency, or treatment and training as a feeble-minded or mental incompetent—which commands observance of the constitutional safeguards of due process * * * and this necessarily includes the duty to see that a subject of an involuntary commitment proceedings is afforded the opportunity to the guiding hand of legal counsel at every step of the proceedings, unless effectively waived by one authorized to act in his behalf. * * * Nor is it sufficient that the Wyoming statute permissively provides that the proposed patient 'may be represented by counsel' * * *." 396 F2d at 396.

*Accord: Dixon v. Attorney General of Commonwealth of Pa.,* 325 F Supp 966 (MD Pa 1971) ; *People v. Potter,* 85 Ill App2d 151, 228 NE2d 238 (1967) ; *People ex rel. Rogers v. Stanley,* 17 NY2d 256, 270 NYS2d 573, 217 NE2d 636 (1966) ; *Denton v. Commonwealth,* 383 SW2d 681 (Ky 1964) ; *Dooling v. Overholser,* 243 F2d 825 (DC Cir 1957). *See A Draft Act Governing Hospitalization of the Mentally Ill,* Public Health Service Publication No. 51, § 9 (1952). *See also State v. Turner,* 253 Or 235, 238, 453 P2d 910 (1969).

Inasmuch as an order of commitment under ORS 426.070-426.390 results in the deprivation of liberty for

an indeterminate period of time, we hold that Fourteenth Amendment due process entitles an allegedly mentally ill person to representation by counsel; that he, or one acting in his behalf, must be fully advised of his right to counsel; and that this right be accorded unless intelligently and understandingly waived. *Carnley v. Cochran,* 369 US 506, 82 S Ct 884, 8 L Ed 2d 70 (1962).

■■ Defendant was not advised of his right to *court-appointed* counsel and thus could not make an effective waiver. *Carnley v. Cochran,* supra; *Schram v. Cupp,* 436 F2d 692, 695 (9th Cir 1970); *State v. Jamison,* 251 Or 114, 444 P2d 15, 444 P2d 1005 (1968). Moreover, defendant's mental condition as described at the October 14 hearing precluded the possibility of an effective waiver even if he had been properly advised of his rights.[2] Therefore, we reverse the order of commitment.

---

[2] Generally, waiver of rights in a mental commitment proceeding presents inherent problems:

"When one thinks in terms of 'waiver,' 'voluntariness' and its related problems, the requirement of acting 'knowingly and intelligently' to effect a valid waiver by those very terms would seem to make this impossible—at least if the person is therein adjudicated mentally ill and committed"! Browne and Fort, *In Re Gault—Its Impact in Oregon,* 5 Will L J 1, 19 (1968).

*See* Palmer v. Ashe, 342 US 134, 72 S Ct 191, 96 L Ed 154 (1951); Wells v. Ellison, 133 Or 155, 159, 289 P 511 (1930); Government of the Virgin Islands v. Niles, 295 F Supp 266 (D VI 1969); Gladden v. Unsworth, 396 F2d 373, 380 (9th Cir 1968).

Twenty-four states have mandatory statutory provisions for appointment of counsel, which cannot be waived. Brackel and Rock, *The Mentally Disabled and the Law* 54, 125 (Rev ed 1971).

In this context it should be noted that ORS 426.100 provides for a continuance of up to 72 hours where counsel is appointed, and permits the court to make "such orders for the care and custody of the person during that period as it deems necessary." ORS 426.100(4).

## REPORTING OF THE COMMITMENT PROCEEDING

Defendant argues in respect to the record in the case at bar (1) that the trial court erred in failing to record a "full account" of the proceedings as required by statute, and (2) that due process requires that commitment proceedings be reported to insure an effective appeal. We first consider defendant's statutory argument.

ORS 426.160 provides:

> *"The judge shall cause to be recorded in the court records a full account of proceedings had at the hearing and examination, together with the judgment and order of the court and a copy of the orders issued.* The account of the proceedings and transcripts of testimony if taken thereat shall be delivered to the county clerk who shall cause it to be sealed and neither the account of the proceedings nor the transcript of testimony if taken shall be disclosed to any person except:
>
> "(1) As provided in ORS 426.170;
>
> "(2) Upon request of the person subject to the proceedings, his legal representatives, or his attorney; or
>
> "(3) Pursuant to court order." (Emphasis supplied.)

This section has not previously been judicially construed to determine what manner of recording is required.

■■ The language of the statute speaks of a "full account" of proceedings at the mental commitment hearing, as opposed to a "report" of proceedings. The distinction is evident from a perusal of ORS 8.340 which provides, in pertinent part:

"* * * * *

"(2) *Upon the trial of any cause, the judge* upon his own motion may, and upon the request of either party *shall, order a report of the proceedings,* in which case *the reporter shall,* in the manner provided in subsection (3) of this section, *make a report of the oral testimony and other proceedings* of the trial to the extent required by the court or by the requesting party.

"(3) When a report is required, the reporter shall:

"(a) Take accurate notes by shorthand or by means of a mechanical typing device using paper tapes; or

"(b) If the judge in his discretion so authorizes, make audio records under such rules as the Supreme Court may prescribe.

"* * * * *." (Emphasis supplied.)

Thus, the legislature's use of the term "full account" indicates that it did not intend to require "reporting" (stenographic or otherwise) of all proceedings. However, in relation to oral testimony, ORS 426.160 appears to require reporting:

"* * * The account of the proceedings *and transcripts of testimony if taken thereat* shall be delivered to the county clerk * * *."

A reasonable implication of the italicized phrase is that if testimony is taken at the hearing it must be reported so as to make available a transcript.[9] Summarizing, then, a "full account" of the proceedings

---

[9] Prior to 1965 this section read:

ORS 426.160. "The judge shall cause to be recorded in the court records a full account of proceedings had at the hearing and examination, together with the judgment and order of the court and a copy of the orders issued."

HB 1489 (1965) amended the section to read:

ORS 426.160. "The judge shall cause to be recorded in the

seems to include reporting (stenographic or otherwise) of oral testimony if taken, but not reporting of proceedings other than oral testimony. Defendant makes a persuasive argument for this court to so construe this statute; that is, a transcript of testimony may be necessary to assure a committed person an effective appeal.⑥

■ The United States Supreme Court has not specifically held that a transcript (that is, complete reporting of all proceedings) is a due process necessity for appellate review.⑦ Instead, the recurring reference

court records a full account of proceedings had at the hearing and examination, together with the judgment and order of the court and a copy of the orders issued. The account of the proceedings and testimony taken thereat shall be delivered to the county clerk who shall cause it to be sealed and neither the account of the proceedings nor the testimony shall be disclosed to any person except:

"(1) As provided in ORS 426.170;

"(2) Upon request of the person subject to the proceedings, his legal representatives, or his attorney; or

"(3) Pursuant to court order."

The legislative history reflects that the primary purpose of the amendment was to remove these records from public scrutiny.

In 1969 the section was amended to its present form (as emphasized by italicized portions):

"The judge shall cause to be recorded in the court records a full account of proceedings had at the hearing and examination, together with the judgment and order of the court and a copy of the orders issued. The account of the proceedings *and transcripts of testimony if taken thereat* shall be delivered to the county clerk who shall cause it to be sealed and neither the account of the proceedings nor the *transcript of testimony if taken* shall be disclosed to any person except:

"* * * * *." Oregon Laws 1969, ch .148, § 1.

⑥ An appeal lies from an order of commitment. State v. Van Tassel, supra; In re Fehl, 159 Or 545, 81 P2d 130 (1938); ORS 19.020.

⑦ Although not passing on the question, the court in *Gault* recognized the problem:

"* * * As the present case illustrates, the' consequences

488

has been to a transcript or an "adequate alternative" thereof, i.e., one which would assure "adequate and effective appellate review."⑧ State and federal court decisions passing directly on this question have adopted this standard.⑨

The "full account" of proceedings provision of

---

of failure to provide an appeal, to record the proceedings, or to make findings or state the grounds for the juvenile court's conclusion may be to throw a burden upon the machinery for habeas corpus, to saddle the reviewing process with the burden of attempting to reconstruct a record, and to impose upon the Juvenile Judge the unseemly duty of testifying under cross-examination as to the events that transpired in the hearings before him." 387 US at 58.

⑧ Most of the relevant cases deal with the necessity of *furnishing* a transcript to an indigent defendant as a matter of equal protection. We do not deal here with a question of equal protection, but pronouncements from these cases offer insight to the quesion before us. In Mayer v. City of Chicago, 404 US 189, 92 S Ct 410, 30 L Ed 2d 372 (1971), the court reaffirmed the principle first enunciated in Griffin v. Illinois, 351 US 12, 76 S Ct 585, 100 L Ed 891 (1956), and reviewed subsequent decisions.

"\* \* \* '[i]n all cases the duty of the State is to provide the indigent as adequate and effective an appellate review as that given appellants with funds . . . .' \* \* \* [citing case]. In terms of a trial record, this means that the State must afford the indigent a ' "record of sufficient completeness" to permit proper consideration of [his] claims.' \* \* \* [Citing case.]

"A 'record of sufficient completeness' does not translate automatically into a complete verbatim transcript. We said in *Griffin* that a State 'may find other means [than providing stenographic transcripts for] affording adequate and effective appellate review to indigent defendants.' 351 U.S., at 20 \* \* \*.

" 'Alternative methods of reporting trial proceedings are permissible if they place before the appellate court an equivalent report of the events at trial from which the appellant's contentions arise \* \* \*.'

"We emphasize, however, that the State must provide a full verbatim record where that is necessary to assure the indigent as effective an appeal as would be available to the defendant with resources to pay his own way \* \* \*." 404 US at 193-195.

⑨ In Commonwealth v. Anderson, infra, a criminal case, the trial proceedings were not recorded and no transcript was avail-

ORS 426.160 on its face would seem to square with this standard without necessitating a transcript (reporting) of proceedings or oral testimony. For example, as suggested in *Commonwealth v. Anderson,* 441 Pa 483, 272 A2d 877 (1971), the court may provide an alternative to such reporting

> "* * * by writing out the questions alleged to be objectionable, the objection entered, the answer of the witness, the court's ruling thereon * * *," 441 Pa at 493,

supplemented by a narrative statement of the proceedings as is contemplated by ORS 19.088. But this and other alternatives to reporting would appear impracticable in cases where there is extensive testimony, cross-examination or other complicating factors, particularly in light of the "adequate alternative" standard. *See* Note, 78 Harv L Rev 143, 266 (1964).

We hold that unless effectively waived, the court must have all proceedings (including testimony) reported or utilize other methods which will preserve a record of the proceedings so as to assure an adequate and effective appeal.

---

able for review. In reversing, the court held after a thorough review of pertinent cases and authorities:

> "* * * [W]hile a transcript per se is not an absolute due process necessity, there must at least be an equivalent 'picture' of what transpired below." 441 Pa at 493.

*Accord:* Williamson v. United States, 224 A2d 309 (App DC 1966); House v. United States, 234 A2d 805 (App DC 1967).

This court is cognizant that under present procedure court reporters are seldom present at commitment hearings, and that some courts before which hearings are conducted have no reporters, apparently because ORS 426.060 permits county courts to hear such matters. As to former, we believe the following is applicable:

> " 'It has been said that the reason for the creation of courts

■■ In the case at bar the court's order of commitment, the only contemporaneous record of the commitment proceedings, does not satisfy this standard. Nor does the "Opinion of the Court,"[①] which was based on the transcript of testimony taken from the hearing on the motion to set aside, meet this standard, although it enlarges the account of the commitment proceedings of September 14, 1971. An account based solely on the recall of witnesses as to testimony and occurrences a month before, and which comes about

of record is founded on the proposition that judicial records are not only necessary but indispensable to the administration of justice * * *.' [Herren v. People, 147 Colo 442, 363 P2d 1044, 1046 (1961).]" Ebersole v. State, 91 Idaho 630, 634, 428 P2d 947 (1967).

In relation to the latter the legislature has provided another way —audio records. ORS 8.340(3)(b).

We are not ruling out the method of the judge making a narrative account of the proceedings, including testimony.

[①] "Opinion of the Court," dated and filed November 1, 1971, set forth this account:

"On the morning of September 14, 1971 Patrick Collman was duly informed of his right to legal counsel by the citation that was served upon him, by the Court, and by Dr. Truax, one of the examining psychiatrists. He ignored said statements. He was confused and mumbled words that were not relevant to the questions asked him. However, he did say: 'I want a doctor; I need help.' Two psychiatrists, Dr. Truax and Dr. Waterman, in the presence of the Court then examined said Patrick Collman as to his mental condition and reported their separate findings in writing under oath to the Court wherein each stated that Mr. Collman was mentally ill and by reason of mental illness was in need of treatment, care or custody. Following the examination, and the observation of his obviously psychotic behavior, this Court formed the opinion and reached the conclusion that he was mentally ill and in need of treatment, care, and custody, and committed him to Dammasch State Hospital.

"Even to a lay person it was obvious that Mr. Collman was mentally ill. He needed a doctor, in fact he asked for one, and he needed immediate hospitalization. By the commitment he was furnished both * * *."

only at the instance of the petitioning party, cannot be deemed a substitute for a contemporaneous court-ordered account of the proceedings.

The record does not reflect whether defendant attempted to cross-examine the two psychiatrists at the commitment hearing. His mental or physical condition may have prevented him from doing so. In any event, such a right is provided by ORS 426.100(3) and our holding on "right to counsel" obviates the need to consider defendant's contentions under this assignment of error.

Because defendant was not represented by counsel at the commitment hearing and did not or was unable to exercise his right to present witnesses and cross-examine opposing witnesses, we cannot properly decide the merits of the commitment order on the record before us. We, therefore, decline to pass on the question of what the burden of proof is to commit a person under this section of ORS ch 426 until that question is squarely before us.

The statutes pertaining to mental commitment proceedings do not specify whether the hearings are to be private or public, as is done for proceedings to determine whether a person is sexually dangerous. See ORS 426.630 (private hearing unless otherwise demanded by patient). Civil actions, generally, must be public unless the parties agree otherwise. ORS 1.040. Nothing in the record indicates the court excluded the public from defendant's hearing. The law does not specify *where* in the courthouse the court must hold a hearing, see ORS 1.090, and the court did conduct defendant's hearing in the *courthouse* holding room. Moreover, when a defendant in a mental commitment proceeding is accorded all the rights to which

he is entitled we see no reason why, if, as in the case at bar, his conduct does not comport with orderly courtroom procedure, the court may not hold the hearing elsewhere than in the courtroom.

 ██ Defendant contends the trial court erred in denying his motion to set aside and expunge the order of commitment. We do not decide whether such a motion is proper as neither party has briefed the issue.[⑫] In any event, the only additional issue which the appeal from the denial of this motion raises—i.e., whether the record should be expunged upon reversal —may also be considered as arising under defendant's direct appeal from the order of commitment.

The term "expunge" is defined in Black's Law Dictionary 693 (4th ed 1951), as

"* * * to destroy or obliterate; it implies not a legal act, but a physical annihilation * * *."

---

[⑫] Defendant relied mainly on ORS 17.610 for support of his motion in the trial court.

ORS 17.610. "A former judgment may be set aside and a new trial granted on the motion of the party aggrieved for any of the following causes materially affecting the substantial rights of such party:

"(1) Irregularity in the proceedings of the court, jury or adverse party, or any order of the court, or abuse of discretion, by which such party was prevented from having a fair trial.

"(2) Misconduct of the jury or prevailing party.

"(3) Accident or surprise which ordinary prudence could not have guarded against.

"(4) Newly discovered evidence, material for the party making the application, which he could not with reasonable diligence have discovered and produced at the trial.

"(5) Excessive damages, appearing to have been given under the influence of passion or prejudice.

"(6) Insufficiency of the evidence to justify the verdict or other decision, or that it is against law.

"(7) Error in law occurring at the trial, and excepted to by the party making the application."

We find no case in which this section has been applied to a mental commitment proceeding and doubt whether it does apply.

In *First Nat. Bank of Portland v. Wall,* 161 Or 152, 88 P2d 311 (1939), plaintiff, who had been adjudged insane and committed, brought a suit against the person who had initiated the insanity proceedings to have the commitment order declared void and the record expunged. Pertinent to the issue before us, the court stated:

> "Plaintiff had his remedy in an appeal from the order of commitment, but he certainly had no cause of suit against the defendant. If he desired the record expunged, application should have been made in the first instance to the court which entered it. It must be obvious that this defendant has no power to expunge the record. No relief is asked against her which can be enforced in this suit. Hence there was a fatal defect of parties." 161 Or at 157.

This reference to expungement apparently led defendant in the instant case to make the motion to the circuit court. This language is dictum and decisions from other jurisdictions lead us to believe the law is otherwise.

A similar application to expunge was before the New York Supreme Court in *Application of Brandon,* 284 App Div 957, 131 NYS2d 204 (1954). The court responded:

> "Assuming the court erred in making its finding and adjudication that applicant was a mentally ill person and required treatment as such in the designated institution, and assuming an appropriate tribunal reversed such finding and adjudication, even so it would not authorize the same being expunged from the record. Reversal results in correction, and not in expungement of the erroneous finding and adjudication.
> "Void judgments or erroneous findings and

decisions may be vacated and set aside, but all this is correction. Expunge means to destroy or obliterate. 'It implies not a legal act, but a physical annihilation.' See Andrews v. Police Court of City of Stockton, Cal.App., 123 P.2d 128, 129.

"The finding and adjudication of the court were the equivalent of a decision and judgment. They may be reversed and set aside or vacated so as to destroy their legal effect, but may not be physically destroyed or obliterated perforce they are found to be erroneous in fact or in law or both." 131 NYS2d at 206-207.

And in *Statman v. Kelly,* 47 Misc2d 294, 262 NYS2d 799 (Sup Ct 1965), a declaratory judgment action to expunge records of arrest after all criminal charges had been dropped, the court stated:

"* * * '* * * [n]o right to have it expunged exists unless such a right is conferred by statute * * *.' It is immaterial that no statute does not prohibit obliteration of official records; orderly government requires that official records shall be maintained unless the law provides otherwise * * *." 262 NYS2d at 802.

In this state the legislature has recognized at least one instance in which court records may be destroyed.[19] Mental commitment records have not been so recognized.[20]

The trial court properly denied the order to expunge.

Affirmed in part; reversed in part.

---

[19] In 1971 the legislature amended ORS ch 419 to allow destruction of juvenile court records under certain circumstances. *See* ORS 419.586.

[20] The legislature, however, has provided for the confidentiality of such records. ORS 426.160, set out on p. 485 of the opinion.