**In re Mental Health of D. B. W.**

**No. 51186.**

Supreme Court of Oklahoma.

Aug. 14, 1980.

---

Legal Aid of Western Oklahoma, Inc., Porter H. Morgan, III, and Stan L. Foster, Oklahoma City, for appellant.

Andrew M. Coats, Dist. Atty. by James P. Laurence, Asst. Dist. Atty., Oklahoma City, for appellee.

HODGES, Justice.

This is an appeal from the order of the trial court committing the appellant, D.B.W., involuntarily to Central State Grif-

fin Memorial Hospital. It is asserted by D.B.W. that the commitment was in error because he was not afforded the procedural safeguards provided by 43A O.S.Supp.1977 §§ 54.1, 55.2, and that these provisions, even had they been invoked, are not constitutionally adequate.

On June 4, 1977, at 8:30 p. m., D.B.W. was taken into custody by the Oklahoma City Police Department. According to the police report, D.B.W. was standing in the middle of 63rd and Kelley wearing trousers, no shirt or shoes, and carrying a second pair of trousers in his hand. The report alleged that he was irrational, confused, disoriented, and unable to respond to simple questions. D.B.W. was taken to the University Hospital where he was examined by a psychiatrist who recommended confinement in Central State Memorial Hospital where he was held until June 7, 1977.

. A Petition for Order of Admission to Hospital was filed on June 6, 1977, by a deputy sheriff of Oklahoma County, alleging that D.B.W. was mentally ill and required hospital care and treatment. A hearing was held on June 7, 1977, concerning D.B.W.'s mental health. As a result of this inquiry, D.B.W. was committed involuntarily for treatment. On June 10, 1977, the acting superintendent of the hospital discharged D.B.W., and declared him restored to competency.

I

Appellee contends that this case is now moot because D.B.W. has been discharged from the hospital. D.B.W. is saddled with the collateral consequences[1] of commit-

---

1. This collateral consequences doctrine was clearly espoused in *In re Ballay*, 482 F.2d 648 (D.C. Cir. 1973) where the court said:

"There is yet another independent reason why the present appeal is not moot—the collateral consequences of being adjudged mentally ill remain to plague appellant. We recently had occasion to consider whether the standard applied in criminal cases, that a 'case is moot only if it is shown that there is *no possibility* that any collateral legal consequence will be imposed on the basis of the challenged conviction,' *Sibron v. New York*, 392 U.S. 40, 57, 88 S.Ct. 1889, 1900, 20 L.Ed.2d 917 (1968) (empha-

sis added), is applicable to contested civil commitment adjudications. We answered in the affirmative relying upon the multitude of legal disabilities radiating from the label 'mentally incompetent.' *Justin v. Jacobs*, 145 U.S.App. D.C. 355, 449 F.2d 1017, 1018–1020 (1971). Cf. *Hudson v. Hardy*, 137 U.S.App.D.C. 366, 424 F.2d 854 (1970). For example, while the commitment stands on the record, party may face state constitutional and statutory restrictions on his voting rights; restrictions on his right to serve on a federal jury; restrictions on his ability to obtain a driver's license; and limitations on his access to a gun license. Moreover,

ment. The legal disabilities[2] and social stigmatization as the result of having been declared in need of mental treatment, and committed to a mental institution remain. An additional basis for deciding that this case is not moot is that D.B.W. could be subjected repeatedly to brief periods of involuntary commitment, with each instance evading judicial review. This is the rationale followed by the 10th Circuit Court of Appeals in *Rex v. Owens*, 585 F.2d 432 (10th Cir. 1978). In *Rex*, the action was dismissed as moot because he was no longer committed. Rex contended his claim was not moot because it was based on circumstances capable of repetition. The 10th Circuit agreed with Rex and cited *Southern Pacific Terminal Co. v. ICC*, 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911) for the principle that a case will not be moot if the issue is capable of repetition, yet evading review.[3] The 10th Circuit Court adopted the two–pronged test enunciated in *Weinstein v. Bradford*, 423 U.S. 147, 96 S.Ct. 347, 349, 46 L.Ed.2d 350 that:

". . . [E]ven in the absence of a class action, a case is not moot when '(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration and (2) there was a reasonable expectation that the same

complaining party would be subjected to the same action again."

 We hold that D.B.W.'s case meets the requirements of the delineated criteria. His commitment and involuntary detention was terminated prior to the appeal of this case. Also, it appears that D.B.W. will be subjected again to commitment under Oklahoma statutes, and, indeed, he already has been recommitted. This is a situation in which a person could be subjected repeatedly to brief periods of involuntary commitment with each instance evading judicial review because of an early discharge. We further hold that the appeal involves undecided questions of vital public concern. In such instances, the appeal will be decided on the merits, notwithstanding the fact that it may have become moot.[4]

## II

D.B.W. contends that 43A O.S.Supp.1977 §§ 54.1 and 55.2 are unconstitutional because they do not require that the individual in custody be advised of his right to remain silent and of his privilege against self–incrimination. Appellee argues that because the hearing was not a criminal matter, these rights are inapplicable.[5]

it is still commonly held that an adjudication of mental incompetency gives rise to a rebuttable presumption of continued incompetency. In many jurisdictions such a presumption may in turn affect the right to dispose of property, to execute contracts and to perform many similar and commonplace functions."
See also *In re Klepper*, 361 N.E.2d 427 (Ohio 1977).

2. The Okla.Const. art. 3, § 1 provided at the time of D.B.W.'s commitment:
 "No person shall be a qualified elector of this state . . . who is detained in a penal or correctional institution, who is a patient in an institution for mental retardation, or who has been committed, by judicial order, to an institution for mental illness."
 It has since been reenacted by referendum November 7, 1978 to provide:
 "All elections shall be free and equal. No power, civil or military, shall ever interfere to prevent the free exercise of the right of suffrage, and electors shall, in all cases, except for treason, felony, and breach of the peace, be privileged from arrest during their attendance

on elections and while going to and from the same."

3. See also *B. J. B. v. The District Court of Oklahoma Co.*, 611 P.2d 249 (Okl.1980).

4. *Payne v. Jones*, 193 Okl. 609, 146 P.2d 113 (1944).

5. The United States Supreme Court has made it clear that a proceeding does not have to be criminal in order for due process guarantees to apply. *In re Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), (involuntary confinement to a juvenile home); *Specht v. Patterson*, 386 U.S. 605, 87 S.Ct. 1209, 18 L.Ed.2d 326 (1967), (individual convicted under a Sex Offenders Act for an indeterminate term with no notice of a full hearing); *McNeil v. Director Patuxent Institution*, 407 U.S. 245, 92 S.Ct. 2083, 32 L.Ed.2d 719 (1972), (individual sent to a juvenile home for an indeterminate term on the basis of an ex parte order committing him for examination. These cases all involved quasi–criminal hearings, and the United States Supreme Court concluded that the deprivation of

The United States Supreme Court has repeatedly recognized that civil commitment for any purpose constitutes a significant deprivation of liberty which requires the protection of due process.[6] This Court in *In re Adams, 497 P.2d 1080 (Okl.1972)* held that the due process clauses of the State and Federal Constitutions were applicable to civil mental disability proceedings. The question is not whether the proceeding is civil or criminal. The matters to be considered are what rights are at stake; how great the infringement on the individual's fundamental freedoms, and what deleterious effects or punishment can stem from the proceedings. These determinations, and not the label the proceedings bear, mandate whether due process procedures are required.[7]

Involuntary commitment to a mental hospital involves a massive curtailment of an individual's liberty, and in many ways resembles a criminal arrest because the individual is taken into custody by the police and, eventually, involuntarily confined in a state institution. Several federal courts have held that strict due process procedural safeguards are required for civil mental illness commitments.[8] A few state courts have also held that due process procedures must be provided for those subject to involuntary commitment to a mental institution.[9] The United States Supreme Court in *Addington v. Texas,* 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323, 334 (1979) determined that at least clear and convincing proof is required to meet due process guarantees in a state civil commitment proceeding.

We find that the Oklahoma Mental Health Law contains sufficient constitutional safeguards. Pursuant to 43A O.S. Supp.1977 § 55.2(b),[10] before the probable cause hearing is held, the person must be represented by counsel, who must present to the individual a statement of his rights.

### III

It is conceded by appellee that the district court failed to follow certain proce-

---

the fundamental right to liberty was so great that due process requirements had to be met. The concurring opinion of Justice White in the case of *Murphy v. Waterfront Commission,* 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964):

"The privilege against self–incrimination, safe–guarding a complex of significant values, represents a broad exception to governmental power to compel the testimony of the citizenry. The privilege can be claimed in any proceeding, be it criminal or civil, administrative or judicial, investigatory or adjudicatory."

Title 43A § 54.1(E) provides for cross–examination and that . . . "No statement, admission or confession made by the person alleged to be a person requiring treatment may be used for any purpose except for proceedings under this act. No such statement, admission or confession may be used against such person in any criminal action whether pending at the time the hearing is held or filed against such person at any later time, directly, indirectly or in any manner or form."

6. *Addington v. Texas,* 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979).

7. See *Sabouri v. Hunter,* 596 P.2d 891 (Okl. 1979); *Rey v. Means,* 575 P.2d 116 (Okl.1978); *Okla. Dept. of Public Safety v. Robinson,* 512 P.2d 128, 133 (Okl.1973).

8. *Miller v. Blalock,* 411 F.2d 548 (4th Cir. 1969); *Lynch v. Baxley,* 386 F.Supp. 378 (D.C.Ala. 1974); *Kendall v. True,* 391 F.Supp. 413 (D.C.

Ky.1975); *Bell v. Wayne County General Hospital at Eloise,* 384 F.Supp. 1085 (D.C.Mich. 1974); *Doremus v. Farrell,* 407 F.Supp. 509 (D.C.Neb.1975); *Lessard v. Schmidt,* 379 F.Supp. 1376, vacated 421 U.S. 957, 95 S.Ct. 1943, 44 L.Ed.2d 2145; *Suzuki v. Quisenberry,* 411 F.Supp. 1113 (D.C.Haw.1976); *Stamus v. Leonhardt,* 414 F.Supp. 439 (D.C.Iowa 1976).

9. *Matter of Sonsteng,* 573 P.2d 1149 (Mont. 1977); *State v. Collman,* 9 Or.App. 476, 497 P.2d 1233 (1972); *Quesnell v. State,* 83 Wash.2d 224, 517 P.2d 568 (1973); *In Re Hayes,* 18 N.C.App. 560, 197 S.E.2d 582 (1973).

10. It is provided by 43A O.S.Supp.1977 § 55.-2(b):

"Upon the filing of a petition alleging that an individual is a person requiring treatment, the district court shall also appoint a licensed and actively practicing attorney who shall represent the person alleged to be a person requiring treatment until a final disposition of the case . . . The attorney shall meet and consult with the person within one (1) day of notification. The attorney shall immediately, upon meeting with the person alleged to be a person requiring treatment, present to him a statement of his rights, including all rights afforded to him by the Oklahoma and United States Constitutions."

dural steps which are mandated by 43A O.S.Supp.1977 §§ 54.1, 55.2. The explanation for the failure to follow the prescribed statutory procedure is that the court was not apprised of the enactment of the statutes, and that the court did not receive copies of the new procedure until thirty hours before D.B.W.'s hearing. Failure to follow the statute is not harmless error.

It must additionally be pointed out that 43A O.S.Supp.1977 § 64 was also amended at the same time §§ 54.1 and 55.2 were enacted. Under the old statute, a person committed to a mental hospital through §§ 54.1 (formerly § 55), and § 58 was considered to be legally mentally incompetent necessitating a judicial restoration to competency. Under § 64 as amended [11] there is no presumption of incompetency; incompetency must be determined in separate and independent proceedings in district court. An examination of the pleading in this case reveals no such proceedings were held; D.B.W. was never declared an incompetent.

It is provided by 43A O.S. § 54.1(A)(2)(b) that the officer who takes the person into protective custody must prepare an affidavit indicating the basis for his belief that this person needs treatment, and the circumstances under which he took the person into custody. If a licensed physician determines that this individual requires emergency detention, the physician must endorse the affidavit. This procedure was not followed.

Pursuant to 43A O.S.Supp.1977 § 54.-1(A)(1), the petition filed against a person in custody must contain a statement of the facts upon which the allegation is based and, if known, the names and addresses of any witnesses to the alleged facts. The petition must be verified and made under penalty of perjury. An examination of the unverified petition filed against the appellant shows that the petition states, "Patient was picked up at 63rd and Kelley Streets in Oklahoma City in a completely irrational condition. Patient could not respond to simple questions. Dr. Beasley recommended treatment at the State Hospital." This statement does not satisfy the statutory requirements concerning the contents of the petition. The petition includes no names or addresses of witnesses. Even if no bystanders were present, the names and addresses of the police officers at the scene were easily obtainable. The petition filed against D.B.W. was inadequate to meet the requirements and intent of the statute.

Title 43A O.S.Supp.1977 § 54.1(B) provides that after the petition is filed, the court shall fix a day for a probable cause hearing, and that a copy of the petition and notice of the time and date for the hearing must be served personally on the person alleged to be a person requiring treatment and to at least one of his or her relatives.[12]

11. It is provided by 43A O.S.Supp.1977 § 64 that:

"No person admitted to any medical facility shall be considered or presumed to be mentally or legally incompetent except those persons who have been determined to be mentally or legally incompetent in separate and independent proceedings of an appropriate district court."

12. The notice must include the following information:

1. The definition provided by Section 3 of this title of a mentally ill person and a person requiring treatment.
2. That the court has appointed an Examining Commission composed of two (2) qualified examiners to examine the mental condition of the alleged person requiring treatment and execute a certificate of their findings;

3. The time and place of the examination to be conducted by the Examining Commission and the hearing on the petition;
4. That, upon request, the hearing on the petition may be conducted as a jury trial;
5. That the petitioner and witnesses identified in the petition may offer testimony under oath at the proceedings conducted by the Examining Commission and at the hearing on the petition;
6. That the court has appointed an attorney for the person alleged to be a person requiring treatment who shall represent him until final disposition of the case;
7. That if the person alleged to be a person requiring treatment is indigent or poor, the court will pay the attorney's fees; and,
8. That the person alleged to be a person requiring treatment shall be afforded such other rights as are guaranteed by State and Federal law and that such rights include a trial by jury. . . ."

**1154**

The notice was not served, nor did it contain the required items of information. It is argued that, because D.B.W. was present at the hearing and had an attorney, he had actual notice, so the fact that he was not served does not matter. Appellee classifies the other items that should have been included in the notice as relatively unimportant.

■ It is difficult to perceive how the basic rights to appointed counsel, a jury trial, privileges guaranteed by the State and Federal Constitutions, and a definition of exactly what constitutes a mentally ill person can be classified as relatively unimportant. Notice is a vital aspect of due process of law.[13] The fact D.B.W. somehow knew of the hearing, and that he had a right to counsel is not sufficient.

■ It is required by 43A O.S.Supp.1977 § 54.1(C) that the court shall first hold a probable cause hearing on the petition to establish whether the person in custody needs treatment. If the court decides that the individual needs medical care, the court schedules a jury trial which must take place within seventy–two hours of the request. In the present case, the probable cause hearing was never held. The jury trial was held within the time span in which the probable cause hearing should have been held. Appellee also asserts that the omission of the probable cause hearing is harmless error because the full hearing was held within the statutory time limit. This Court unanimously held in *B. J. B. v. The District Court of Oklahoma Co.*, 611 P.2d 249 (Okl. 1980) that a trial judge may not combine a 43A O.S. § 55.2 Examining Commission Hearing with a 43A O.S. § 54.1 Hearing on a Mental Health Petition in the absence of voluntary and intelligent waiver. It was determined that the combination constituted a violation of a statutory right.

While we find the public officials in this case acted in good faith, and were no doubt unaware of the recently enacted statutory changes, our judgment dictates a reversal of the proceeding.

REVERSED.

LAVENDER, C. J., and WILLIAMS, BARNES, SIMMS, DOOLIN, HARGRAVE and OPALA, JJ., concur.

IRWIN, V. C. J., dissents.

---

**13.** *Mullane v. Central Hanover Bank and Trust Co.*, 339 U.S. 306, 313–315, 70 S.Ct. 652, 657, 94 L.Ed. 865, 872–874 (1949); *Bomford v. Socony Mobil Oil Co.*, 440 P.2d 713, 719 (Okl.1968).