Dear Honorable Grimes,
The Attorney General has received your request for an official opinion asking, in effect:
 1. Prior to canceling the license of a surety bondsman and his agents or runners pursuant to the provisions of 59 O.S. 1332(C)(5)(1) (1985) for nonpayment of forfeited bonds, must the Insurance Commissioner provide for an administrative hearing?
 2. Prior to the suspension of a bail bondsman's license or the license of a bail bondsman's runner, pursuant to 59 O.S. 1311 (1985), must the Insurance Commissioner comply with the special notice requirements set forth therein, or, alternatively, with the general notice requirements of the Administrative Procedures Act?
Under the general provisions of Chapter 33 of Title 59 of the Oklahoma Statutes, all bail bondsmen in the State, together with certain employees, are required to be licensed and regulated by the State Insurance Commissioner. 59 O.S. 1302(A), 59 O.S. 1303 (1985). Failure to comply with the licensing requirements set forth in the statutory scheme governing this area can subject a violating bondsman or runner with a revocation or suspension of the license to conduct this business in the State, and can also be the predicate for civil fines of up to One Thousand Dollars ($1,000.00) per occurrence. 59 O.S. 1310 (1985).
For purposes of these provisions, a "bail bondsman" is defined to be any surety bondsman, professional bondsman, or cash bondsman as further defined in the statutes. 59 O.S. 1301(5) (1985). A "surety bondsman" is defined to be any person who has been approved by the Commissioner and appointed by an insurer by power of attorney to execute and countersign bail bonds for the insurer in connection with judicial proceedings and charges and receives money for his services. 59 O.S. 1301(6) (1985). A "runner" is defined as any person approved by the Insurance Commissioner and employed by a bail bondsman for the purpose of assisting the bail bondsman in presenting a defendant in court when required or to assist in the legal apprehension and surrender of the defendant to the court, or of keeping the defendant under any necessary surveillance. 59 O.S. 1301(10) (1985).
 I.
Your first question addresses the situation in which the license of a surety bondsman is canceled under the provisions of 59 O.S. 1332 (1985) for the reason that the bondsman has not satisfied a forfeiture of a bond declared by a district court. Under 59 O.S. 1332's provisions, if there is a breach of the undertaking of the bondsman, and the court therefore declares the undertaking, and any money, property or securities deposited as bail, forfeited, the affected bondsman has thirty (30) days to file a motion with the Court to set the forfeiture aside. If the motion to set aside is denied, or if no such motion is filed, and if no appeal is filed, Subsection (C)(5)(b) of 59 O.S. 1332 provides that the bondsman shall have twenty (20) days from receipt of the final order and judgment of forfeiture from the court clerk to deposit cash or other valuable securities in the face amount of the bond with the court clerk.
If the bondsman fails to deposit such cash or other securities within the prescribed twenty (20) day time frame, 59 O.S. 1332(C)(5)(c) states:
 "If the additional cash or securities are not deposited with the court clerk within twenty (20) days from the date of service of the final order and judgment of forfeiture from the court clerk then the court clerk shall notify the Insurance Commissioner by sending a certified copy of the final order and judgment of forfeiture and proof that the bondsman and, if applicable, the insurer have been notified by mail with return receipt requested. The Insurance Commissioner shall:
 "(1) In the case of a surety bondsman immediately cancel the privilege and authorization of the insurer to do business within the State of Oklahoma and cancel the license of all surety bondsman agents or runners of the insurer who are licensed by this act."
This portion of 59 O.S. 1332 makes no provision for any hearing to be afforded to surety bondsmen or their runners before their licenses and authorization to conduct business in the State are canceled. Indeed, the statute's facial requirements appear to mandate an immediate and unequivocal cancellation without any opportunity for the affected persons to appear and present any legal arguments that they may have.
However, to provide that such a licensee has no right to any hearing relative to the administrative cancellation of his substantive property interest in practicing his chosen profession would be violative of Article II, Section 7 of the Oklahoma Constitution.
In 1979, the Oklahoma Supreme Court stated, with reference to the status to be accorded to professional licenses:
 "The license to practice a profession is at least a property interest and deserves appropriate protection. The right to practice one's profession is sufficiently precious to surround it with a panoply of legal protection."
State v. Bridwell, 592 P.2d 520,525 (Okla. 1979); accord, Whittle v.State Board of Examiners of Psychologists, 483 P.2d 328, 329 (Okla. 1971).
In this regard, in order to comply with the due process requirements of the Oklahoma Constitution, both notice and an opportunity to be heard must be afforded to the licensee before a revocation or cancellation of that person's valuable property right to practice his profession can be effected. In re Mental Health of D B.W., 616 P.2d 1149 (Okla. 1980);State v. Mauldin, 602 P.2d 644 (Okla. 1979).
Even more recently, the Supreme Court of the United States reaffirmed that vested substantive property interests cannot be deprived by public entities except pursuant to procedures constitutionally adequate under the provisions of the Due Process Clause of the federal Constitution.See, eg., Cleveland Board of Education v. Loudermill, 470 U.S. 106 S.Ct., 84 L.Ed.2d 494, 503 (1985). The Court went on to state that this principle requires "some kind of hearing" prior to the divestiture of a constitutionally protected right to employment in a certain field, once it has been established under state law that the right in question is to be considered a vested substantive right. Id., at 503-504.
Oklahoma has promulgated similar general statements by the adoption of the Administrative Procedures Act, 75 O.S. 301 et seq. (1981). 75 O.S.314(c) of the Act states that no revocation of any license is lawful unless, prior to the institution of agency proceedings, the agency gives notice by mail to the licensee of the facts or conduct which warrant the intended action, and the licensee is given the opportunity to show compliance with all lawful requirements for the retention of the license. A temporary exception is permitted for those rare circumstances where the public health, safety or welfare imperatively requires emergency action, but even in those cases, the licensee is guaranteed the right to a prompt post-deprivation hearing. Id.
It is a fundamental rule of statutory construction that when two acts are susceptible of a construction which will give effect to both without doing violence to either, this construction should be adopted in preference to one which leads to a conclusion that there is a conflict.AMF Tubescope v. Hatchel, 547 P.2d 374, 379 (Okla. 1976). While the provisions of 59 O.S. 1332 regarding the cancellation of a surety bondsman's license can be construed as being in direct conflict with the provisions of 75 O.S. 314(c) of the Administrative Procedures Act, a fair construction can also be made that the two sections of the statutes should be read together, so that the immediate cancellation of such a license is to be effected after the Insurance Commissioner has complied with the statutory right to hearing and notice provided for in the Administrative Procedures Act.
 II.
Your second inquiry revolves around a slightly different question, that of the nature of the notice that must be afforded a bail bondsman or runner prior to the taking of action by the Insurance Commissioner for the violation of any of the laws of this State relating to bail bonds, a situation encompassing, but not limited to, the type of scenario set forth in your first inquiry. Section 1311[59-1311] of Title 59, as most recently amended in 1984, provides that the Insurance Commissioner, if it appears that such a violation has occurred, shall give at least twenty (20) days notice in writing to the bail bondsman or runner, and to the insurer represented by such persons, if a surety bondsman. This notice must be accompanied by a copy of the charges of the unlawful conduct of the bondsman or runner. The Insurance Commissioner may, in proper circumstances, suspend temporarily the license of the violator prior to holding a formal hearing on same. He is then required to call a hearing on the suspension within thirty (30) days of such notice for the purpose of taking evidence and testimony on any issues of fact raised in the notice.
This provision is similar, but arguably in conflict with the general provisions of the Administrative Procedures Act concerning notice to be given licensees regarding the revocation of a license. Compare, 59 O.S.1311 (1985) with 75 O.S. 314(c) (1981). However, this arguable contradiction in language may be harmonized by viewing the two statutes as complementing each other. 75 O.S. 314(c) of the Administrative Procedures Act provides both a requirement of notice and the possibility of temporary suspension of licensure privileges. However, the statute does not mandate that any particular time frame be followed in effecting such notice. See also, 75 O.S. 309 (1981). 59 O.S. 1311 of the Bail Bondsman and Runners Act merely sets forth a mandatory time frame for this notification requirement and does not truly contradict same.
It is, therefore, the official opinion of the Attorney Generalthat:
 1. Prior to canceling the license of a surety bondsman and his agents or runners pursuant to the provisions of 59 O.S. 1332(C)(5)(1) (1985) for nonpayment of forfeited bonds, the Insurance Commissioner must provide for an administrative hearing, as set forth in 59 O.S. 1311 (1985).
 2. Prior to the suspension of a bail bondsman's license or the license of a bail bondsman's runner, pursuant to 59 O.S. 1311 (1985), the Insurance Commissioner must comply with the special notice requirements set forth therein. Such provisions do not conflict with the general provisions of 75 O.S. 314(c) (1981) of the Administrative Procedures Act, but should be read in conjunction therewith.
MICHAEL C. TURPEN, ATTORNEY GENERAL OF OKLAHOMA
MICHAEL SCOTT FERN, ASSISTANT ATTORNEY GENERAL DEPUTY CHIEF, TORT DEFENSE DIVISION