Argued May 15, reversed and remanded June 23, 1972

STATE OF OREGON, *Respondent, v.* ROBERT A. VERNA (No. C-71-04-1183 Cr.), *Appellant.*

498 P2d 793

*Ken C. Hadley,* Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

*John H. Clough,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and John W. Osburn, Solicitor General, Salem.

Before LANGTRY, Presiding Judge, and FOLEY and FORT, Judges.

LANGTRY, J.

Defendant was indicted for kidnapping and assaulting his former wife. He was convicted, in a jury trial, for kidnapping. On appeal defendant contends the trial court erred in denying his pretrial motion to dismiss his court-appointed attorney and represent himself.

The record reflects that two attorneys appointed to represent defendant resigned prior to trial because defendant insisted on conducting his own defense and refused to cooperate with them. A third attorney was appointed and appeared at trial with defendant. On the day of trial defendant moved to dismiss this attorney and defend himself. Pertinent excerpts of the colloquy between defendant and the court relating to this request are set out in the margin.[1] The court denied defendant's motion. After taking of evidence,

---

[1] "THE COURT: Mr. Sanchez [defendant's counsel], has the defendant been able to assist you?

"MR. SANCHEZ: No, Your Honor.

"THE COURT: He has not? Mr. Verna, do you know what this is about?

"THE DEFENDANT: What the proceedings here—yeah, I imagine so. I'm supposed to be here for a crime I presumably committed, which I don't feel I committed.

"THE COURT: Apart from guilt or innocence, do you understand you are charged with kidnapping?

"THE DEFENDANT: I understand I'm charged with kidnapping.

"THE COURT: And you're charged with assault with a shotgun?

"THE DEFENDANT: Which I don't understand, but that's all right.

"THE COURT: This is the charge made against you. Do you have any recollection of these events?

"THE DEFENDANT: Yeah.

"THE COURT: Have you told them to Mr. Sanchez?

"THE DEFENDANT: We haven't had much time to discuss anything.

"THE COURT: All right. Do you want to discuss the matters with him this afternoon?

"THE DEFENDANT: I think we should. After all, I have talked with him for 15 minutes. I don't think that could be quite —I don't call that adequate counsel.

"THE COURT: I'll withhold calling the jury down until Mr. Sanchez has had a few minutes to talk to his client.

"* * * * *."

defendant asked to make the closing argument to the jury, which the court also denied.

After recess:

"MR. SANCHEZ: *Yes. I have again advised my client like I did for an hour or so at the jail one time. We had a pre-trial conference before Judge Olson [sic] which I talked to him then, and he persisted to tell me that he wanted to represent himself.* I have talked to the other attorneys that were in this case, especially Mr. James Hannam. I have his file. I have studied the file. I have attempted to explain to Mr. Verna what the charges are.

"The one problem we have here, Your Honor, is this: Mr. Verna strongly believes that he has never been divorced * * *. Mr. Verna claims that he was never notified of the hearing, and I have endeavored to the best of my ability to explain to him that he should have notified the Court at this time, or that he had ample opportunity to be present at the hearing.

"THE DEFENDANT: I don't even know what the date of the hearing was.

"MR. SANCHEZ: He claims he did not have any notice, and to this day in his own mind, he claims that he *is* still married to the complainant, or the victim in this case.

"THE COURT: Is this by way of defense, Mr. Verna?

"THE DEFENDANT: This is what I believe.

"THE COURT: Well, you can still be married to a woman and kidnap her and assault her with a deadly weapon.

"THE DEFENDANT: I don't see how you can kidnap somebody out of unwholesome atmosphere. It's beyond me. We're supposed to have some kind of moral atmosphere in this goddamn country of some kind. I'm wondering where it is. It doesn't sound like it's in the Bar Association with me.

"THE COURT: You're charged here by the Grand Jury—

"THE DEFENDANT: Let's go on the railroad track. Send me down to Salem, and quit fooling around. I'm tired. I'm tired of fighting the whole damn thing, and fighting the State of Oregon; as far as fighting the Bar Association of the State of Oregon, which they don't see their responsibility, which their responsibility is to society, and not to their damn pocket books, which is some moral clause they haven't got. So some ethical code between attorneys and not attorneys and clients. I'm just tired of it all. Let's go in there, and go through the whole thing, and send me down, and get it over with. I'm tired.

"THE COURT: What if the jury finds you not guilty?

"THE DEFENDANT: Oh, hell; the jury will find me guilty. There's no doubt in your mind; no doubt in my mind. According

■ A defendant in a criminal case has the constitutional right not only to be represented by counsel, but also, if he so elects, to represent himself.

---

to your laws, I'm guilty. I'm not guilty, according to moral laws, in my society we have set up here to protect the moral, I'm not guilty. *The only way I can see to talk to this jury is to talk to them myself, without counsel, and bring up what we call irrelevant in a court of law.* The relevancy in a court of law, to me, does not apply, because how in the hell can a man all of a sudden, as I said to Judge Burke in his court, when he had a mistrial on July 16th, I said to the man, 'If you're walking down the street and you have never raised your fist against anybody all your life, and all of a sudden, you reach out and punch somebody in the nose, I'd be interested why.'

"Now, if this makes me crazy, goddam, I'm nuts. But I don't think I'm crazy. The psychiatrists don't think I'm crazy, because I have a moral sense, and know right from wrong. I'm crazy. I would have to be in today's society. I'm sure.

"THE COURT: Well, a shotgun—does your moral code give you a right to pull a shotgun on people?

"THE DEFENDANT: My moral code says when somebody goes out and screws around on me, I have a right to protect my home; I have a right to take a child out of that home, if the State won't help * * *.

"THE COURT: Well, we'll go ahead and the State can put on their case. You have counsel.

"THE DEFENDANT: *I won't use counsel.*

"THE COURT: I'm going to make whoever represents you, whether it's yourself and Mr. Sanchez adhere to the rules of evidence.

"THE DEFENDANT: I don't know what the rules of evidence are, and I care less.

"THE COURT: That's why you have an attorney.

"THE DEFENDANT: The rules of evidence, to me, are what happened. Why does a person do these things?

"THE COURT: All right. But you're in here, and you're going to try the case according to the rules.

"THE DEFENDANT: I don't know what the rules are.

"THE COURT: Then, you're going to find out what the rules are, and Mr. Sanchez is going to ask all the questions.

"In all criminal prosecutions, the accused shall have the right * * * to be heard by himself and counsel * * *." Oregon Constitution, Art I, § 11; *State v. Butchek,* 121 Or 141, 153, 253 P 367, 254 P 805 (1927); *State v. Dalebout,* 4 Or App 601, 480 P2d 451 (1971).

The same right has been held to arise out of the federal constitution, *United States v. Plattner,* 330 F2d 271, 275 (2d Cir 1964), and state constitutions with provisions similar to Oregon's. *See* Annotation, 77 ALR2d 1233, 1235 (1961).[9] Thus, although the emphasis in recent years has been on the constitutional right of indigent defendants to appointed counsel, this safeguard does not limit the right to act *pro se*; the right to counsel does not force counsel on a defendant. *State v. Butchek,* supra 121 Or at 153; *State v. Dalebout,* supra, 4 Or App at 604.

■ Understandably, trial courts are hesitant to ac-

"THE DEFENDANT: He's going to ask all the questions? Then send me down to the tank. There's no need to be in here.

"THE COURT: You can tell him what you want. He can phrase it, if there are any objections to questions.

"THE DEFENDANT: So far, Mr. Sanchez hasn't listened to a thing I have to say. I don't think he will listen to me in the court.

"THE COURT: You have heard the ruling. I should also advise you, too, if there is any unruly conduct, it can be a waiver of your right of confrontation, and the trial can go on without you being present.

"THE DEFENDANT: That's fine, because that's all it's doing, anyway. I'm not present.

"MR. SANCHEZ: Thank you, Your Honor.

"THE DEFENDANT: *I'll make a formal motion for dismissal of attorney, by the way.*

"THE COURT: I'll deny your motion." (Emphasis supplied.)

[9] Price v. Johnson, 334 US 266, 284-86, 68 S Ct 1049, 92 L Ed 1356 (1948), cited by the state as contrary authority, applies to the right to represent oneself on appeal, not at trial.

cept a waiver of counsel;[9] however, that caution cannot justify forced appointment of counsel when a defendant tenders an effective demand to proceed *pro se*. As one commentator aptly put it:

> "When a trial court is confronted with a defendant who asserts his desire to waive counsel, it must steer carefully between the Scylla of denying the defendant's substantial right to determine his own fate and the Charybdis of violating the constitutional right to counsel of a person who does not validly waive this right * * *." Note, *The Right of an Accused to Proceed Without Counsel,* 49 Minn L Rev 1133, 1141 (1965).

■ Because the election to defend *pro se* necessarily involves a waiver of the right to counsel, it is incumbent upon the court to determine, by recorded colloquy, that the election or waiver is intelligent and competent. *Carnley v. Cochran,* 369 US 506, 82 S Ct 884, 8 L Ed 2d 70 (1962); *Johnson v. Zerbst,* 304 US 458, 465, 58 S Ct 1019, 82 L Ed 1461, 1466, 146 ALR 357 (1938); *State v. Collman,* 9 Or App 476, 497 P2d 1233 (1972). At minimum, the court should determine whether defendant understands the nature of the charge, the elements of the offense and the punishments which may be exacted. Further informing him of some of the pitfalls of defending himself, the possible advantage that an attorney would provide, and the responsibility he incurs by undertaking his own defense will also serve to insure defendant's decision is made intelligently.

---

[9] Perhaps some hesitancy to dispense with counsel can be attributed to judicial comments such as this:

> "It is the practice of some trial judges in this state and elsewhere to appoint counsel in spite of the defendant's willingness to waive it. If all trial judges would adopt this practice, most of the problems discussed above would never arise." Tucker v. Gladden, 245 Or 109, 118, 420 P2d 625 (1966).

■ Prior to trial in the case at bar defendant was examined by a psychiatrist who found him "capable of assisting in his own defense." The state points to segments of defendant's statements to the court as evidencing a lack of understanding concerning the nature of the charges against him. We have read these statements and find that, in context, they do not exhibit a lack of understanding but rather a disbelief that his conduct was criminal. See n 1, supra. The court made no finding, nor does the record establish, that defendant's election to proceed *pro se* was unintelligent or incompetently made, and, therefore, we reverse. *United States v. Pike,* 439 F2d 695 (9th Cir 1971); *Reynolds v. United States,* 267 F2d 235 (9th Cir 1959); *People v. Ruiz,* 263 Cal App 2d 216, 69 Cal Rptr 473 (1968); *State v. Thomlinson,* 78 SD 235, 100 NW2d 121 (1960); *State v. Penderville,* 2 Utah2d 281, 272 P2d 195 (1954).

■ The right of a defendant to represent himself will not be given effect where dispensing with an attorney's services would disrupt the orderly conduct of trial. *State v. Dalebout,* supra; Annotation, 77 ALR2d 1133, 1139 (1961), and supplemental cases. In the case at bar defendant made certain statements prior to trial which the state construes as indicating an intent by defendant to disrupt courtroom procedure if he were allowed to represent himself.② We do not deem these pretrial statements in the context in which they were made as sufficient to justify denial of defendant's right to defend himself. Cases cited by the state as justifying denial of defendant's right to act *pro se* involve disruptive conduct *during* trial. *Mayberry v. Pennsyl-*

---

② These statements, found in n 1, related to defendant's contention that he did not know what the rules of evidence were and "could care less."

*vania,* 400 US 455, 91 S Ct 499, 27 L Ed 2d 532 (1971);
*Illinois v. Allen,* 397 US 337, 90 S Ct 1057, 25 L Ed 2d
353 (1970). While we do not rule out the possibility
that pretrial threats of disruptive courtroom behavior
under some circumstances may be sufficient to justify
denying a competent defendant the right to proceed
*pro se,* we do not find those circumstances in the case
at bar.

Reversed and remanded.