Argued October 20, affirmed December 22, 1975, reconsideration
denied January 28, petition for review denied March 9, 1976

STATE OF OREGON, *Respondent, v.* RAY
CHARLES MAPLE (No. C 74-11-3396 Cr)
(CA 4276), *Appellant.*

544 P2d 183

*Diane Spies,* Portland, argued the cause for appellant. With her on the briefs were Connall & Spies, P.C., Portland.

*W. Michael Gillette,* Solicitor General, Salem, argued the cause for respondent. With him on the brief was Lee Johnson, Attorney General, Salem.

Before SCHWAB, Chief Judge, and LANGTRY and FOLEY, Judges.

SCHWAB, C. J.

Defendant was convicted of burglary in the first degree, ORS 164.225, by burglarizing premises we refer to as the Barton residence. His principal contention on appeal is that the trial court improperly admitted evidence of a "* * * prior felony murder for which the defendant had been charged and acquitted." Counsel for the defendant has not complied with Rule 6.18[1] of this court as to this assignment of error, or, for

---

[1] "* * * * *

"Each assignment of error shall be clearly and succinctly stated under a separate and appropriate heading. The assignment of error must be specific and must set out verbatim the pertinent portions of the record. Assignments of error which the court can consider only by searching the record for the proceedings complained of will not be considered.

"* * * * *." Rule 6.18.

that matter, as to the other assignments of error. Nevertheless, because of the nature of the issue, we have considered whether the jury should have been permitted to know that the murder had taken place.

On July 25, 1974, a burglary occurred at the Barton residence some time between 9:25 a.m. and 11:45 a.m.

In addition to other items, a significant amount of silverware was taken. Some time during the same period the Avio residence which was approximately one-half mile from the Barton house was also burglarized. In the course of this burglary Mrs. Avio was murdered. Defendant and one Greenwood were subsequently tried for the murder of Mrs. Avio. The defendant admitted participation in the Avio burglary, but was acquitted by the jury.[2] Greenwood was convicted.

Shortly after the burglaries the police were informed by a witness who was in possession of a credit card stolen from Mrs. Avio's residence that the defendant had shot Mrs. Avio. On July 27, defendant was arrested at his residence at which time he, his house and his automobile were searched. A substantial amount of the property stolen from the Barton residence was found in defendant's house and the Barton silverware was found in the trunk of his car.

Defendant, upon being asked by the police where he had gotten the silverware, said that he had bought it "from some dude in the park." However, after further questioning at the police station defendant said that he had not bought the silverware, but, rather, that it had come from the Avio burglary in which he had participated. At the same time he was confessing the

---

[2] For a reason which does not appear in the record, the defendant was tried only for the Avio murder and was not charged with the Avio burglary.

Avio burglary he was denying any participation or intent to participate in the Avio murder which he contended was solely Greenwood's responsibility.

In the course of the trial of the case at bar the defendant took the stand, denied admitting that he had first lied about how he had gotten the Barton silverware and again contended that he had purchased it from an individual he had met in a park.

■ At a pretrial conference, the matter of defendant's conflicting statements about how he obtained the Barton silverware was discussed. The prosecutor stated that if the defense would not make the voluntariness of those statements an issue before the jury the state would direct its witnesses, when testifying as to the defendant's conflicting statements concerning the stolen property, not to mention that a murder had taken place in which defendant was implicated. Defendant refused to so stipulate. The state's position was that if it was put upon its proof as to the voluntariness of defendant's statements the state was entitled to offer the full circumstances surrounding the arrest and questioning of the defendant in order to demonstrate that the statements obtained from defendant were voluntary. As did the trial judge, we agree with the state's position.

When the trial commenced defendant was on notice that the voluntariness of his statements was the stumbling block which was preventing him from obtaining a limitation on the testimony which would exclude information about the murder. Without the stipulation, artificially withholding references to the murder would have impaired the cogency of the state's testimony. From opening statements on references were made by both the defense and the state to Mrs.

Avio's death. Defendant did finally agree to stipulate that the voluntariness of his statements could be taken from the jury:

"[Defense counsel]: I at this time will withdraw any objection to voluntariness and request that that issue be taken away from the jury in the event—when the court instructs, and reassert my previous position that the only parts of those that are relevant are the parts wherein there is an attempted exculpatory statement in relation to the Barton burglary. They are so highly prejudicial that it will convict him even though he has been acquitted of that crime."

The stipulation was not accepted, but the trial judge did give a cautionary instruction at the defendant's request and without objection as to its form. The defendant, citing *State v. Zimmerlee,* 261 Or 49, 492 P2d 795 (1972), seeks to profit by this offer to stipulate. In *Zimmerlee* the offer to stipulate came early and fully covered any legitimate purpose the state might have had in offering evidence of a second crime. Here, however, the offer to stipulate came too late. The record was already replete with evidence concerning the Avio murder. Defendant had been offered virtually all he sought and had turned it down. He had refused to give up one point and in so doing sacrificed another. As Mr. Justice Harlan once said:

"The criminal justice process, like the rest of the legal system, is replete with situations requiring 'the making of difficult judgments' as to which course to follow * * *. Although a defendant may have a right, even of constitutional dimensions, to follow whichever course he chooses, the Constitution does not by that token always forbid requiring him to choose * * *." *McGautha v. California,* 402 US 183, 213, 91 S Ct 1454, 28 L Ed 2d 711 (1971).

Even if the voluntariness of the defendant's

statements had not been an issue, the evidence of the murder and the defendant's connection with it would have been admissible. Contrary to what the defendant appears to argue, *State v. Manrique,* 75 Adv Sh 386, 271 Or 201, 531 P2d 239 (1975), does not hold that only under the exceptions it there discusses may evidence of other crimes be admitted as probative.

It may well be that evidence of the Avio murder could properly have been admitted under one of the exceptions which *Manrique* does discuss, but we do not reach that question for it was admissible for another reason, that is, to prove defendant's consciousness of his guilt in connection with the Barton burglary.

> "A party's falsehood * * * in the * * * presentation of his cause is an indication of his consciousness that his case is weak or unfounded and from that consciousness may be inferred the cause's lack of truth and merit * * *. In a criminal case such conduct is an indication of his consciousness of guilt and from that consciousness his actual guilt can be inferred * * *." *State v. Carroll,* 251 Or 197, 201, 444 P2d 1006 (1968).

*See also, State v. Fong,* 211 Or 1, 314 P2d 243 (1957); *State of Oregon v. Kader,* 201 Or 300, 270 P2d 160 (1954); *State v. Voit/Strong,* 12 Or App 520, 506 P2d 734, Sup Ct *review denied* (1973).

Defendant lied about the loot recovered from his house and car when he said it came from the Avio burglary. In assessing the reason for the lie the jury was entitled to have available to it all the circumstances surrounding the defendant's decision to tell it. Those circumstances included the fact that at the time the lie was told defendant was under arrest for burglary and murder. The murder thus played a part in the motivation for that lie. The jury could well have found that the defendant lied because (1) he knew

he was liable for the Avio burglary, (2) he hoped his story would exculpate him from the murder, so (3) it was worthwhile to minimize his potential criminal liability by merging the Barton loot with the Avio loot.

Lastly, on this issue, we note that the evidence of the defendant's guilt in connection with the Barton burglary was so overwhelming that it is almost impossible to believe that a jury would have failed to find him guilty even if it had not known of the murder of Mrs. Avio.

The remaining assignments of error do not warrant discussion.

Affirmed.