Argued July 19, affirmed August 27, reconsideration
denied October 11, petition for review denied
October 23, 1979 (287 Or 641)

# STATE OF OREGON,
*Respondent,*

*v.*

# GEORGE BARNETT, JR.,
*Appellant.*

## (No. 78 3331, CA 14479)

598 P2d 1301

Gary L. Hooper, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

W. Benny Won, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James A. Redden, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

Before Schwab, C. J., and Lee, Gillette and Campbell, Judges.

CAMPBELL, J.

## CAMPBELL, J.

Defendant appeals his convictions of rape in the third degree, ORS 163.355,[1] and sodomy in the third degree, ORS 163.385.[2] He assigns error to the trial court's refusal to subpena the victim's venereal disease records, the court's refusal to appoint counsel for his defense, the court's refusal to grant a continuance, and the court's overruling of his demurrer. We affirm.

Defendant requested that the victim's venereal disease records be subpenaed on the basis that, if those records showed, as defendant stated they would, that the victim had venereal disease at the time that defendant was accused of having had sexual intercourse with her, and defendant himself had no venereal disease, those facts would tend to prove defendant did not have sexual intercourse with the victim. The court denied defendant's request, stating that defendant had not given the court sufficient information to issue the subpena. Defendant was able to inform the court only that the records would be at a "VD clinic" at the Hope Plaza in Eugene. He was unable to give the court the name of a person in control of the records. *See generally* ORS 136.555 to 136.595. At one point in the transcript the following occurred:

"THE DEFENDANT: (Mumbling.) Well, all I can say is Hope Clinic. Wait a minute, I—maybe I can give you more information on that—(mumbling)—I do have something here where I can give you a little more information. Maybe I can give you a name—

---

[1] ORS 163.355 provides:

"(1) A male commits the crime of rape in the third degree if he has sexual intercourse with a female under 16 years of age.

"2) Rape in the third degree is a Class C felony."

[2] ORS 163.385 provides:

"(1) A person commits the crime of sodomy in the third degree if he enages in deviate sexual intercourse with another person under 16 years of age or causes that person to engage in deviate sexual intercourse.

"(2) Sodomy in the third degree is a Class C felony."

"On one of the witnesses I will have to get more information about because the VD thing—because she was supposed to have went to one of these people's house, the nurse that was looking for the party went to the house there looking for her where she was supposed to have resided a couple of nights during this time that she was supposed to have been—

"THE COURT: Well, if you can provide me with any more information at a later time, Mr. Barnett, that's all right. At least we'll get the subpoenas issued for these folks.

"THE DEFENDANT: Well, I'm trying to see— County Health Department—County Health Department—Erikson [*sic*]—Erickson at the County Health Department. I can't make it—I have to get that information, I guess, from one of the witnesses here.

"THE COURT: All right. Well you can deal with that a little bit later then."

It appears from this excerpt that defendant was perusing his notes in an effort to find the name of a nurse at the clinic who may have had some contact with the victim. When he stated, "I can't make it—I have to get that information, I guess, from one of the witnesses here," he conceded that information in his notes would not have aided the court. Thus, the court, lacking sufficient information to issue the subpena, did not err in refusing to issue the subpena.

Prior to trial, defendant fired three different attorneys, stating that he did not feel properly represented since they all wanted him to plead guilty. He also stated to the trial court that he was told that he could not have another lawyer. The trial court refused to appoint counsel to represent defendant, stating:

"See, my problem is, Mr. Barnett, I am not convinced that you could find anybody that you would approve of as a lawyer. I am sure from what I have seen so far that the first time you had any disagreement whatsoever we'd be right back in the same position."

Defendant contends that he was denied his right to counsel under the Sixth Amendment to the United States Constitution. In analyzing this contention, the

[800]

first issue with which we must deal is whether defendant waived his right to counsel. Insofar as we can determine from the record, at the time defendant fired his third attorney he was given the option by the judge then presiding over the matter of retaining that attorney or proceeding without counsel. Defendant chose the latter. The judge who presided at trial in effect reaffirmed the earlier ruling and held defendant to his previous choice.

Defendant contends that during the proceedings under review he made conflicting statements concerning his desire for an attorney. At one point, the following colloquy occurred:

"THE COURT: You sure look like to me you need a lawyer, Mr. Barnett.

"THE DEFENDANT: I don't doubt that, I don't doubt that in the least. But I don't want nobody. I can talk myself to the penitentiary better than anybody I know. If I got to go, I feel better sending myself than have somebody else assist me in going to the penitentiary."

Later, there was the following exchange:

"THE COURT: * * * Second of all, we have the time problem. This case has been set for a long time. You have gone through lawyers whom you decided not to take. You have now decided to take the case over.

"THE DEFENDANT: I didn't decide, I was made to take it over myself.

"THE COURT: You fired your lawyer.

"THE DEFENDANT: Sure I fired him. If Rockefeller fired a lawyer, he would have another one tomorrow if he didn't like him. I am in a position to get any lawyer any time under the rights of the Constitution. I'm due that. But I was told that I couldn't have no more lawyers because I don't like these lawyers who have been carrying my case."

Defendant argues that we should interpret the latter excerpt as a request for an attorney. We do not so interpret it. Rather, once the hyperbole is disregarded,

the quoted language was in essence defendant's recapitulation of the choice with which he had been presented previously.

■ Defendant has the constitutional right not to be forced to proceed with a particular attorney, or with any attorney at all. *Faretta v. California,* 422 US 806, 95 S Ct 2525, 45 L Ed 2d 562 (1972); *State v. Verna,* 9 Or App 620, 498 P2d 793 (1972). He also has a right to representation by counsel in any criminal proceeding. *Gideon v. Wainright,* 372 US 335, 83 S Ct 792, 9 L Ed 2d 799 (1963). He cannot, however, simultaneously exercise these rights. *State v. Easton,* 35 Or App 603, 582 P2d 37, *rev den* (1978). In choosing to exercise the *Faretta* right defendant waived the *Gideon* right. *State v. Easton, supra.* As Mr. Justice Harlan once said:

> "The criminal justice process, like the rest of the legal system, is replete with situations requiring 'the making of difficult judgments' as to which course to follow * * *. Although a defendant may have a right, even of constitutional dimensions, to follow whichever course he chooses, the Constitution does not by that token always forbid requiring him to choose * * *. *McGautha v. California,* 402 US 183, 213, 91 S Ct 1454, 28 L Ed 2d 711 (1971), *quoted in State v. Maple,* 23 Or App 626, 544 P2d 183 (1975), *rev den* (1976).

Defendant does not appear to argue that his waiver was not made knowingly and intelligently as required in, *e.g., Faretta v. California, supra,* and *State v. Verna, supra.* Rather, he contends that the trial court failed to follow certain minimum standards for waiver of the right to counsel established in *State v. Verna.* In *State v. Verna,* the trial court had denied the defendant's pretrial motion to proceed *pro se*, and denied the defendant's request to make the closing argument to the jury himself. We noted that the trial court made no finding, and the record did not establish, that the defendant's election to represent himself was unintelligently or incompetently made, and reversed the defendant's conviction. We stated:

[802]

"Because the election to defend *pro se* necessarily involves a waiver of the right to counsel, it is incumbent upon the court to determine, by recorded colloquy, that the election or waiver is intelligent and competent. *Carnley v. Cochran*, 369 US 506, 82 S Ct 884, 8 L Ed 2d 70 (1962); *Johnson v. Zerbst*, 304 US 458, 465, 58 S Ct 1019, 82 L Ed 1461, 1466, 146 ALR 357 (1938); *State v. Collman*, 9 Or App 476, 497 P2d 1233 (1972). At minimum, the court should determine whether defendant understands the nature of the charge, the elements of the offense and the punishments which may be exacted. Further informing him of some of the pitfalls of defending himself, the possible advantage that an attorney would provide, and the responsibility he incurs by undertaking his own defense will also serve to insure defendant's decision is made intelligently." 9 Or App at 626

Here, the trial court did not make the specific findings set out in *State v. Verna.* We do not interpret that case, however, to require the trial court to conduct a catechism with the defendant, analogous to *Miranda* warnings, in the absence of which a conviction must be reversed. The trial court carefully advised the defendant of the possible advantages of representation by counsel. Defendant, as noted above, was quite aware that a possible consequence of his decision to represent himself was conviction and incarceration. Nowhere did defendant suggest at trial, or does the record indicate, that he was confused as to the rather rudimentary elements of the offenses with which he was charged.

The Sixth Amendment does not require a court to countenance continuous delays, appointing counsel until the defendant finds one with whom he is totally content. We hold that the trial court did not err in refusing to appoint counsel to represent defendant.

As his third assignment of error, defendant argues that the trial court erred in denying his request for a continuance. Defendant, however, made no motion or request for a continuance. Rather, in response to a query by the court he stated that he was not prepared

[803]

to proceed. Under *State v. Longoria*, 17 Or App 1, 520 P2d 912, *rev den* (1974), in the absence of a motion for a continuance, defendant cannot assign as error on appeal the trial court's failure to grant a continuance.

Even assuming that defendant's statement that he was unprepared to proceed constituted an adequate request for a continuance, the trial court did not err in refusing to grant a continuance. Such a request is addressed to the sound discretion of the trial court and its ruling thereon will only be disturbed upon a showing of abuse of discretion. *State v. Otten*, 234 Or 219, 380 P2d 812 (1963). Defendant's case was not complex. It had been delayed for nearly four months since the arraignment. Two of the postponements were on defendant's motion, the first because defendant requested the appointment of new counsel and the second because of the withdrawal of defendant's counsel due to "irreconcilable differences" between defendant and counsel. Defendant had the assistance of three attorneys during this period. Further, defendant points to no specific prejudice arising from the court's failure to grant a continuance, but rather argues generally that his lack of training in the law and his lack of mobility due to his incarceration rendered it impossible for him to prepare for the case in the time allowed. We conclude that the time allowed was sufficient and that the trial court did not abuse its discretion in failing to grant a continuance.

The issue raised in defendant's final assignment of error was recently decided in *State v. Manthe*, 38 Or App 90, 588 P2d 1131, *rev den* (1979). We decline to reconsider the issue.

Affirmed.