Argued and submitted October 22, 1982, affirmed March 16, reconsideration denied April 29, petition for review denied May 24, 1983 (295 Or 122)

STATE OF OREGON,
*Respondent,*

*v.*

STANLEY EARL SCHMICK,
*Appellant.*

(10-81-02833; CA A23474)

660 P2d 693

Robert A. Miller, Springfield, argued the cause and filed the brief for appellant.

Christine Dickey, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

Before Gillette, Presiding Judge, and Warden and Young, Judges.

GILLETTE, P. J.

Warden, J., dissenting.

## GILLETTE, P. J.

Defendant was convicted by a jury of sodomy in the first degree and rape in the first degree, both class A felonies. He represented himself at trial. He now seeks a new trial on the ground that he was denied his right to a fair trial by the failure of the trial court to ensure that he had waived his right to assistance of counsel.[1]

When defendant first appeared for arraignment, on April 3, 1981, he appeared without counsel. The court determined that he was ineligible for court-appointed counsel, and the arraignment was continued. On April 6, he appeared with retained counsel, Mr. Miller, and entered a plea of not guilty. On May 15, 1981, defendant's motion to postpone his trial, which had been set for May 20, was granted.[2] The trial was postponed again for the convenience of the court, because of a shortage of judges, and reset for November 17, 1981.

On October 30, 18 days before trial, Miller moved to be allowed to withdraw as defendant's attorney, because defendant had failed to pay his fee.[3] A hearing was held on this motion on November 2, before Judge Beckett. Defendant stated that he intended to have an attorney at trial and still desired to have Miller represent him. He was employed, but his budget did not leave him money to pay his attorney. Miller stated that defendant owned a house but that he could not use it as collateral to obtain a loan. The court concluded:

"* * * Mr. Schmick, I'm willing to allow Mr. Miller to withdraw, and I will so order. But it's got to be with the understanding that you have your attorney no later than

---

[1] The denial of the motion to postpone is the only alleged error properly before us.

[2] That motion was not opposed by the district attorney.

[3] The Code of Professional Responsibility states that an attorney may request permission to withdraw from employment when his client "[d]eliberately disregards an agreement or obligation to the lawyer as to expenses or fees," DR 2-110(C)(1)(f), but that "[i]n any event, a lawyer shall not withdraw from employment until he has taken reasonable steps to avoid foreseeable prejudice to the rights of his client, including * * * allowing time for employment of other counsel * * *," DR 2-110(A)(2). The same lawyer who withdrew as trial attorney for defendant now prosecutes defendant's appeal based on a denial of the right to the assistance of counsel.

this, the end of this week, and shall inform the court who that attorney is.

"Now, there will be no delay of the trial, so whatever you do from now until the time of trial, as far as securing an attorney, you are going to be stuck with that decision, and it is your decision."

Defendant expressed concern that he could not obtain a new attorney, because he could not afford one. He re-applied for court-appointed counsel, and it was again determined that he was ineligible.

On November 12, at the request of the deputy district attorney prosecuting the case, a hearing was held to determine if defendant was to be tried on the 17th as scheduled. Witnesses for the state who lived in Arizona were planning to leave for Oregon the next morning by car, and the deputy district attorney was concerned about a possible postponement because defendant had not yet obtained a lawyer. He advised the court that he was opposed to a postponement but that, if there were one, it needed to be ordered then so that he could notify the witnesses before their departure.

Defendant stated that he had been looking for a lawyer but could not find one:

"* * * I can't seem to find a new lawyer. He wants either five thousand or ten thousand cash. They won't accept payments. I can put some mortgage on my home and have my mortgage and lose the house and my kids will have no house at all."

On interrogation by the court, defendant stated that he had three children, earned $545 net bi-weekly, and had deposited $500 as security for his release. The judge concluded:

"He has tenure in his job and earns good money. I take it is a matter of priority tying the allocation of his funds rather than the lack of financial resources that postures him in the way I find him today. I interpret that to be of his own willful choice and decision, so the case will go on for trial on the 17th."

That afternoon, another hearing was held, this time at the request of Mr. Melevin, a lawyer whom defendant had contacted. Melevin stated that he was willing to

represent defendant, but because of the short time remaining before trial and his own conflicting schedule on the trial date, he would be willing to do so only if the trial were postponed. The deputy district attorney opposed the postponement. He stated that he did not know whether he could intercept the witnesses from Arizona. The judge expressed doubts about defendant's willingness to pay a lawyer; Melevin stated that he was not willing to take the case without pay. Defendant stated that he was willing to convey to Melevin whatever was left unencumbered in his residence.

The judge asked the deputy district attorney to call the Arizona witnesses to see if he could intercept them and discussed with the two attorneys a possible alternate trial date if the postponement were to be allowed. During a recess, the deputy telephoned the witnesses in Arizona. He reported that they, the alleged victim and her father, were opposed to further postponement but that the father had stated that January would be better than December if the trial were set over. The deputy also stated that he had talked to the alleged victim, who told him that, if the trial were again delayed, she would not attend. The judge, stating that the defendant's "heroic effort to get an attorney at the last minute" should have been made as soon as he and his first lawyer had a falling out, denied the motion to postpone.[4] Defendant appeared *pro se* at his trial.[5] On appeal, he contends that he did not knowingly and voluntarily waive his right to assistance of counsel.

---

[4] Melevin also stated that he wished to discuss reports disclosed by the prosecutor with Miller but that he could not because Miller was out of town.

[5] At ready call the day before trial, the following exchange occurred:

"THE COURT: State versus Schmick.

"MR. HARCLEROAD: Douglass Harcleroad for the state. We are ready. It will take possibly a day and a half. I don't know what Mr. Schmick's plans are in the way of witnesses.

"THE COURT: Mr. Schmick?

"THE DEFENDANT: I still need a lawyer.

"THE COURT: Well, that's been dealt with, I think, on prior occasions before this court, and you have the funds to hire one. You have always had those funds. As I indicated to you on earlier occasions you seem to have a different priority for commitment of your resources and funds.

"The case will go out for trial tomorrow."

■ We find the trial court's refusal to grant a further continuance to this defendant, and the court's requirement that defendant proceed to trial, to be entirely appropriate and permissible under the facts of the case. A defendant's right to retain counsel of his choice must, after a reasonable opportunity to exercise that right, be balanced against the state's need to conclude the case in a timely manner. *Ungar v. Sarafite,* 376 US 575, 589-90, 84 S Ct 841, 11 L Ed 2d 921 (1963); *State v. Page,* 18 Or App 109, 523 P2d 1291 (1974).[6]

■ Unlike an indigent defendant who must rely on the state, a defendant who is able to retain counsel is free to do so (or forego doing so) at any time. Where a defendant has failed to obtain counsel at the time of trial after a reasonable opportunity to do so, he may be compelled to go to trial without counsel. *Ungar v. Sarafite, supra; see also State v. Page, supra.* The appropriate considerations are whether the defendant has had a reasonable opportunity to obtain counsel, whether his failure to obtain counsel is a result of his own actions and whether the interests of the state would be prejudiced by the delay. *Ungar v. Sarafite, supra; State v. Page, supra; State v. Pflieger,* 15 Or App 383, 515 P2d 1348 (1973). In this case, the trial judge appropriately addressed all these considerations and answered them against defendant. The record justifies his conclusions in each instance.

Affirmed.

**WARDEN, J.,** dissenting.

In *State v. Verna,* 9 Or App 620, 626, 498 P2d 793 (1972), we stated:

> "Because the election to defend *pro se* necessarily involves a waiver of the right to counsel, it is incumbent upon the court to determine, by recorded colloquy, that the election or waiver is intelligent and competent. *Carnley v. Cochran,* 369 US 506, 82 S Ct 884, 8 L Ed 2d 70 (1962); *Johnson v. Zerbst,* 304 US 458, 465, 58 S Ct 1019, 82 L Ed 1461, 1466, 146 ALR 357 (1938); *State v. Collman,* 9 Or App 476, 497 P2d 1233 (1972). At minimum, the court

---

[6] The dissent's discussion of authorities on the need for a knowing and intelligent waiver of the right to counsel on the record misses the point of this case. All the cases discussed involve an indigent's right to appointed counsel.

should determine whether defendant understands the nature of the charge, the elements of the offense and the punishments which may be exacted. Further informing him of some of the pitfalls of defending himself, the possible advantage that an attorney would provide, and the responsibility he incurs by undertaking his own defense will also serve to insure defendant's decision is made intelligently."

*Verna* does not "require the trial court to conduct a catechism with defendant, analogous to *Miranda* warnings, in the absence of which a conviction must be reversed," *State v. Barnett,* 41 Or App 797, 803, 598 P2d 1301, *rev den* 287 Or 641 (1979), but "[i]n any event, the record must clearly demonstrate that the decision to waive counsel was the product of an intelligent and understanding choice." *State v. Rocha,* 48 Or App 1017, 1023, 618 P2d 475 (1980). A defendant "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" *Faretta v. California,* 422 US 806, 835, 95 S Ct 2525, 45 L Ed 2d 562 (1975), *quoting Adams v. United States ex rel McCann,* 317 US 269, 279, 63 S Ct 236, 87 L Ed 268, 143 ALR 435 (1942).

The majority opinion limits *Verna* by holding that it does not apply in the case of a defendant who can afford to retain legal counsel. I am unable to discern any basis for such a distinction. *Verna's* requirement that an intelligent waiver be demonstrated by a recorded colloquy recognizes the importance of a criminal defendant's decision to defend himself without an attorney. The decision to proceed *pro se* is no less critical when the defendant can afford to hire a lawyer. It may in fact be a more difficult decision for a nonindigent defendant, because he must decide whether to commit personal assets to pay for his legal defense or attempt to defend himself, but an indigent defendant need not consider the expense, outside of a possible future order of restitution. Thus, a showing on the record that the defendant has been made aware of the dangers of proceeding *pro se* is no less important here than in the case of an indigent defendant.

Using the same balancing test used by the majority, I would reach a different result. *"[A]bsent a knowing*

*and intelligent waiver, no person* may be imprisoned * * * unless he was represented by counsel at his trial." *Argersinger v. Hamlin,* 407 US 25, 37, 92 S Ct 1006, 32 L Ed 2d 530 (1972). (Emphasis supplied; footnote omitted.) In *Johnson v. Zerbst,* 304 US 458, 58 S Ct 1019, 82 L Ed 1461, 146 ALR 357 (1938), the court stated:

" '[C]ourts indulge every reasonable presumption against waiver' of fundamental constitutional rights and * * * 'do not presume acquiescence in the loss of fundamental rights.' * * * The determination of whether there has been an intelligent waiver of right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." 304 US at 464 (Footnotes omitted).

It is possible to find a knowing and voluntary waiver of the right to counsel from a record that, at least superficially, discloses nothing but a steadfast and persistent demand for representation; a defendant might obstinately refuse to cooperate with and then discharge one lawyer after the next, all the while expressing a desire to be represented, and still be held to have knowingly waived the right to counsel. An accused cannot be allowed to control and disrupt the course of the prosecution against him in that way. *See, e.g., State v. Barnett, supra.* But this is not such a case. The trial court ruled that defendant's refusal to pay his first attorney was out of conscious choice and not necessity. That is not the equivalent of a discharge without cause. Although defendant may have chosen not to pay his attorney, he did not acquiesce in the attorney's withdrawal. More importantly, the court had the power to withhold permission for the attorney to withdraw on the eve of trial. By refusing to do so, the court forced defendant into the difficult position of either finding an attorney who was willing to undertake the defense of two Class A felonies with only 15 days for preparation, or representing himself.

The court essentially advised defendant only that he should retain an attorney by the time of trial, "or else." It did not advise him of the disadvantages of going to trial without one. Nothing in the record indicates that defendant's efforts during this two-week period to secure another lawyer were less than wholehearted. When defendant

found an attorney who was willing to represent him, but only if a postponement were granted, the request for delay was refused. Although significant considerations weighed against further delay, defendant's need for postponement was in part court-created. The denial of the motion for postponement may not have in itself denied defendant his right to counsel,[1] but it is a factor to be considered.

The majority relies on *Ungar v. Sarafite,* 376 US 575, 84 S Ct 841, 11 L Ed 2d 921 (1964), and *State v. Page,* 18 Or App 109, 523 P2d 1291, *rev den* (1974). *Ungar* was a contempt proceeding arising from a single statement made by a witness in the presence of the court. (The contempt probably could have been punished summarily at the end of the hearing.) The witness found to be in contempt, after appearing with counsel, was granted two continuances to allow other counsel to appear with him. When the second lawyer appeared, he requested another continuance because he was in the midst of a trial. The motion was denied and the witness, Ungar, who was himself a lawyer and was familiar with the court's practices regarding continuances, defended himself. On those facts, *Ungar* is readily distinguishable from this case.

In *Page,* the defendant fired his retained attorney the day before trial. His motion for a postponement on the day of trial was denied, he went to trial without a lawyer, and this court affirmed his conviction. However, the trial court gave the defendant the option of reengaging his fired attorney, who was prepared for trial, and gave him time to do so, but he declined to do so. Unlike the instant case, the defendant in *Page* made a wholly voluntary decision to waive counsel.

Here, defendant may have played a part in bringing about the difficult situation in which he found himself but certainly was offered no way out once he was there. Although defendant was charged with two Class A felonies

---

[1] "The matter of continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process even if the party fails to offer evidence or is compelled to defend without counsel. * * * Contrariwise, a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality." *Ungar v. Sarafite,* 376 US 575, 589, 84 S Ct 841, 11 L Ed 2d 921 (1964).

and faced the possibility of a severe penalty, the court was less than solicitous of his continuously expressed desire for representation by counsel. The record in this case is completely bare of any warning to the defendant of the dangers of proceeding *pro se* or of the determination by the court required by *State v. Verna, supra,* that the defendant understood the nature of the charges against him, the elements of the offenses and the punishment he faced. It cannot be said that defendant's right to counsel was "diligently protected," as was the case in *State v. Pflieger,* 15 Or App 383, 386, 515 P2d 1348 (1973), *rev den* (1974), relied on by the majority.

Considering all the circumstances, I would not find that defendant made a knowing and intelligent waiver of his right to counsel and would therefore reverse and remand for a new trial. Therefore, I dissent.