Argued and submitted January 28, affirmed in part and reversed and remanded in part April 22, Twitty's reconsideration and State's reconsideration denied July 24, both petitions for review denied August 24, 1987 (304 Or 56)

## STATE OF OREGON,
*Respondent,*

*v.*

## CATLIN TWITTY,
*Appellant.*

## (85-CR-478; CA A39395)

735 P2d 1252

Daniel H. Koenig, Eugene, argued the cause for appellant. With him on the brief was Horton & Koenig, Eugene.

Jonathan H. Fussner, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Warden, Presiding Judge, and Richardson and Young, Judges.

WARDEN, P. J.

### WARDEN, P. J.

Defendant appeals his conviction for murder, ORS 163.115, assigning eight errors. We affirm the conviction but reverse and remand as to certain costs assessed against defendant.

Defendant's first assignment is that the trial court erred in permitting him to waive his right to counsel and to represent himself at trial, because the court mistakenly advised him that imposition of a 10-year minimum sentence would not be mandatory if he were convicted of murder.[1]

■ Article I, section 11, of the Oregon Constitution provides that "[i]n all criminal prosecutions, the accused shall have the right * * * to be heard by himself and counsel * * *." A defendant in a criminal case has the right to waive counsel and represent himself. *State v. Verna,* 9 Or App 620, 624, 498 P2d 793 (1972). The same right arises out of the Sixth Amendment.[2] *Adams v. United States ex rel McCann,* 317 US 269, 279, 63 S Ct 236, 87 L Ed 268 (1942). In *Verna,* we stated:

"[B]ecause the election to defend *pro se* necessarily involves a waiver of the right to counsel, it is incumbent upon the court to determine, by recorded colloquy, that the election or waiver is intelligent and competent. * * * At minimum, the court should determine whether defendant understands the nature of the charge, the elements of the offense and the punishments which may be exacted. Further informing him of some of the pitfalls of defending himself, the possible advantage that an attorney would provide, and the responsibility he incurs by

---

[1] At the hearing on defendant's request to waive counsel, the following colloquy took place:

"The Court: I'm not sure, Mr. [prosecutor], I know the legislature recently changed the law with regard to the minimum — mandatory minimum sentence. I don't think it would apply to this case.

"[Prosecutor]: No, your honor, it doesn't."

The court and the prosecutor mistakenly believed that the amendment to ORS 163.115 which requires the imposition of a mandatory 10-year minimum sentence for a defendant convicted of murder had not come into effect until after the August 8, 1985, homicide. The amendment contained an emergency clause, however, and became effective on July 14, 1985. Or Laws 1985, ch 763, § 1.

[2] The Sixth Amendment provides, in pertinent part:

"In all criminal prosecutions, the accused shall enjoy the right to a * * * public trial, by an impartial jury of the State and district wherein the crime shall have been committed, * * * and to have the Assistance of Counsel for his defense."

undertaking his own defense will also serve to insure defendant's decision is made intelligently." 9 Or App at 626. (Citations omitted.)

We have not interpreted *Verna* "to require the trial court to conduct a catechism with the defendant, analogous to *Miranda* warnings, in the absence of which a conviction must be reversed," *State v. Barnett,* 41 Or App 797, 803, 598 P2d 1301, *rev den* 287 Or 641 (1979), but "the record must clearly demonstrate that the decision to waive counsel was the product of an intelligent and understanding choice." *State v. Rocha,* 48 Or App 1017, 1023, 618 P2d 475 (1980). A defendant "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.' " *Faretta v. California,* 422 US 806, 835, 95 S Ct 2525, 45 L Ed 2d 562 (1975), *quoting Adams v. United States ex rel McCann, supra,* 317 US at 279.

In this case, the trial court convened a hearing specifically to consider defendant's request to waive counsel and appear *pro se* at his trial. The trial court was well aware of the requirements of *Verna* and, in fact, at the hearing read a portion of the passage quoted above. The court went to great lengths to impress upon defendant the serious nature of the charge against him and the gravity of his decision to waive counsel and proceed *pro se.* The court explained the constitutional rights to have an attorney and, if defendant was indigent, to have counsel appointed. The charge and its individual elements, including the burden of proof, were carefully spelled out. The court detailed several disadvantages of self-representation. Defendant was advised of some defenses and their notice requirements, of search and seizure issues and the suppression of evidence, and about jury selection, discovery, trial procedure and his right to choose whether or not to testify. The court twice told defendant that, if convicted, he faced a mandatory sentence of life imprisonment. Throughout the hearing and, indeed, at subsequent hearings,[3] defendant un-

---

[3] One week after the hearing to consider defendant's waiver of counsel and his request to proceed *pro se,* a pretrial hearing was held. Defendant was again advised as to the serious nature of the charge against him, his constitutional right to counsel and, if eligible, to appointed counsel, and that, if convicted, a mandatory sentence of life imprisonment would be imposed. Additionally, immediately before the trial began, the trial court confirmed that defendant had previously waived counsel and that he "persisted" in doing so at the trial.

equivocally acknowledged that he understood the charge against him, the elements of the crime charged, the maximum possible punishment and some disadvantages of self-representation. That is precisely what Article I, section 11, the Sixth Amendment, *Verna* and *Faretta* require. A trial court is not constitutionally obligated to detail mandatory minimum sentences, matrix computation, eligibility for parole or parole board policies.[4] On this record, the trial court did not err in permitting defendant to waive counsel and proceed *pro se.*[5]

Defendant next argues that the trial court erred in permitting him to waive his right to trial by jury, because he misunderstood the precise vote of the jury that would result in a hung jury and a mistrial.

■ The right to a jury trial is guaranteed by Article I, section 11, of the Oregon Constitution[6] and the Sixth Amendment.[7] That right is personal to the defendant and may be waived. *Duncan v. Louisiana,* 391 US 145, 158, 88 S Ct 1444, 20 L Ed 2d 491 (1968); Or Const, Art I, § 11; ORS 136.001(2). To be effective, the waiver "must consist of an intelligent and competent decision by the accused to relinquish a known right." *State v. Swint,* 3 Or App 528, 529, 475 P2d 434 (1970);

---

[4] We cannot see how the trial court could have further impressed upon defendant the crucial nature of his decision to waive counsel, because, as defendant was told, the mandatory imposition of a life sentence is the most severe penalty allowed by Oregon law, with the exception of the penalties for aggravated murder. *See* ORS 163.095 and ORS 163.105.

[5] *Compare Jones v. Cupp,* 7 Or App 415, 420, 490 P2d 1038 (1971), *rev den* (1972) (constitutional right to be advised of the "basic legal consequences" of a guilty plea does not include parole ineligibility); *Hartzog v. Keeney,* 81 Or App 38, 40, 724 P2d 835, *rev allowed* 302 Or 460 (1986) (same, relying on *Jones v. Cupp, supra*); *see also Hill v. Lockhart,* 474 US 52, 56, 106 S Ct 366, 88 L Ed 2d 203 (1985) (Supreme Court has

"never held that the United States Constitution requires the state to furnish a defendant with information about parol eligibility in order for the defendant's plea to guilty to be voluntary, and indeed such a constitutional requirement would be inconsistent with the current rules of procedure governing the entry of guilty pleas in the federal courts. See Fed Rule Crim Proc 11(c) * * *.")

[6] Article I, section 11, provides, in part:

"In all criminal prosecutions, the accused shall have the right to public trial by an impartial jury * * *; provided, however, that any accused person, in other than capital cases, and with the consent of the trial judge, may elect to waive trial by jury and consent to be tried by the judge of the court alone, such election to be in writing * * *."

[7] *See* n 2, *supra.*

*see Johnson v. Zerbst,* 304 US 458, 464, 58 S Ct 1019, 82 L Ed 1461 (1938); *Patton v. United States,* 281 US 276, 312-13, 50 S Ct 253, 74 L Ed 854 (1930).

At the pretrial hearing, defendant stated that he desired to waive his right to a jury trial. The court then advised him that he was constitutionally entitled to a jury. The court explained that, in a bench trial, the judge would make both legal and factual determinations. The court also informed him that he would not be given more favorable consideration merely because he had waived a jury trial. Defendant acknowledged that he understood those things and further stated that "[m]y position is I have greater confidence in the rationale of the judge than I have in 12 people picked out at random." When asked, defendant said that he was not "under the influence of anything" or otherwise mentally impaired or disoriented. The following colloquy then took place:

> "[Defendant]: Your Honor, just to make it a little clearer. If I pick a jury of 12 people to get an acquittal, I need to convince 10 of them. To get a mistrial I only have to convince three. *A mistrial in my mind just opens up a new trial. I would rather not have the second trial. I would rather have one man and he either—he judges on the evidence that's presented before him* but it's not, to my mind three out of 12 or four out of 12, that in itself is reasonable doubt. *I would rather deal with one person.*

> "The Court: I'm satisfied, if there's no other problems. I will tell you this, you seem straightforward to me. However, sometimes people try to juggle the system around. It sounds like you want to get the thing tried and get it decided.

> "[Defendant]: Just want to get it over with." (Emphasis supplied.)

■ ■   Defendant now contends that his waiver was not competently and intelligently made, because he was not informed that he need convince only one juror to get a hung jury and a mistrial.[8] *See* Or Const, Art I, § 11; ORS 136.450. However, defendant's statements demonstrate that he knowingly chose to give up the possibility of avoiding conviction by having a hung jury in order to have the finality and certainty

---

[8] Defendant concedes that the constitutional and statutory requirements that the waiver be in writing were met by a letter from him to the trial court.

of a verdict from the court, without having to try the case twice. He also indicated that he preferred the "rationale" of the judge over that of a randomly picked jury and that he preferred to deal with only one person. That is a "rational exercise of rights based upon the same intuitive factors that any other person uses in choosing a trier of fact." *State v. Swint, supra,* 3 Or App at 531. We therefore hold that the error, if any, in failing to correct defendant's misinformation concerning the jury vote required for a hung jury was harmless beyond a reasonable doubt. *See Chapman v. California,* 386 US 18, 23-24, 87 S Ct 824, 17 L Ed 2d 705 (1967); *State v. Van Hooser,* 266 Or 19, 25-26, 511 P2d 359 (1973); *State v. Naughten,* 5 Or App 6, 8, 480 P2d 448, *rev den* (1971).

■ Defendant next argues that there was insufficient evidence to support the trial court's finding that he intentionally murdered the victim. That assignment of error is not properly before us, because defendant "made no motion for judgment of acquittal either at the close of the state's case or at the end of the trial." *State v. Miller,* 49 Or App 955, 957, 620 P2d 978 (1980). An error not properly preserved below will not be considered on appeal, except in unusual circumstances. *State v. Miller, supra.*

■ Defendant next contends that the trial court erred in concluding that the state had presented sufficient evidence to disprove defendant's claim of self-defense. The record is replete with evidence that refutes that claim.

Defendant next asserts that his Fourteenth Amendment due process rights were violated when the trial court, sitting as trier of fact, accepted and read a trial memorandum submitted by the state. The memorandum contained a summary of the facts and legal argument with citations of authority concerning the admissibility of evidence and defendant's claim of self-defense. The record reveals that the trial court exercised the utmost caution in regard to the memorandum. The judge stated that he did not read it before trial. On request from the prosecutor, the court treated the memorandum as the state's opening statement.[9] The court later reconfirmed with

---

[9] We agree with the state that the memorandum's summary of facts did not go beyond the acceptable content of opening argument. The record indicates that defendant was timely provided a copy of the memorandum.

the prosecutor that evidence would be produced to support the factual assertions made in the memorandum. Furthermore, the record indicates that the judge did not consider it as evidence:

> "The Court: [T]he facts are going to be decided by this Court based upon what comes out of these witnesses' mouths over here, not by what you [defendant] say from down there or what [the prosecutor] says. That's not evidence. Do you understand?

> "[Defendant]: Yes.

> "The Court: So, I wanted to clear up if you had any problem with the Court receiving and reading this Trial Memorandum."

The trial court did not err in accepting and reading the memorandum. *See State v. Collins,* 68 Or App 101, 105, 680 P2d 713, *rev den* 297 Or 458 (1984); *see also Grieco v. Meachum,* 533 F2d 713, 719 (1st Cir), *cert den* 429 US 858 (1976) ("In the absence of any showing that the memoranda infected the fact-finder's determination of the issues at trial, we hold that the [submission of the *ex parte* trial memoranda] did not violate petitioner's rights to due process of law.")

▪       Defendant next assigns error to the admission in evidence of a tape recorded interview with him, because there was no express finding on the record that he had voluntarily given the statement. The record contains abundant evidence that defendant's taped statement was given voluntarily, after he was informed of his rights, and that it was not a result of coercion or compulsion by the interviewing officers. There was no error. *See State v. Cohn,* 43 Or App 913, 915-16, 607 P2d 729 (1979).

▪    ·   Defendant argues that the trial court erred in deducting from his security deposit certain expenses "specially incurred by the state in [his prosecution]." ORS 161.665(1). He first contends that costs for a psychiatric evaluation made before he was indicted for the murder cannot properly be assessed against him. We agree. In *State v. Haynes,* 61 Or App 43, 655 P2d 621 (1982), *rev den* 294 Or 491 (1983), we held that only those expenses specially incurred *after* the formal prosecution of a defendant has commenced may be assessed as costs under ORS 161.665(1) and that formal prosecution

begins with a grand jury indictment, an information or a complaint that charges the defendant with a particular crime. The state concedes that the evaluation occurred before an information was filed but argues that, because defendant was under arrest when the evaluation took place, it should be considered as part of defendant's "prosecution." We reject that argument and hold that the trial court erred in assessing costs for the psychiatric evaluation that occurred before defendant was formally charged.

■      Defendant's second contention is that the hourly fees charged by certain witnesses—all doctors—may not properly be assessed against him as costs under ORS 161.665. We agree. The state may not recover more than the statutory witness fees, *State v. Washburn,* 48 Or App 157, 159, 616 P2d 554 (1982), and the trial court erred in assessing more than that amount.

■      Defendant's final assignment is that the trial court erred in ordering that the costs of prosecution be deducted from his security deposit. The security deposit was made subject to the express condition that it would be "available to satisfy defendant's obligations (fines, attorney fees, victim restitutions, etc.) under judgment." The trial court inquired into defendant's ability to pay the costs, ORS 161.665(3), and the record indicates that the security deposit was posted by defendant.[10] The trial court did not err in ordering that the costs of prosecution be deducted from defendant's security deposit. *See State v. Wise,* 40 Or App 303, 308, 594 P2d 1313 (1979).

Conviction affirmed; reversed as to costs awarded for pre-indictment psychiatric examination and expert witness fees; and remanded with instructions to reduce costs award accordingly.

---

[10] The original security deposit was paid by one Brinkman-Giordano. Defendant later personally posted his own security deposit, exonerating the full amount deposited by Brinkman-Giordano.